STATE of Alabama

v.

REYNOLDS METALS COMPANY.

8 Div. 813.

Supreme Court of Alabama.

Nov. 28, 1955.

658

Clopper Almon, Sheffield, and Mitchell & Poellnitz, Florence, for appellee.

John Patterson, Atty. Gen., and Willard W. Livingston and H. Grady Tiller, Asst. Attys. Gen., for appellant.

of Revenue. The decree upheld the assessment as to some of the items and set it aside as to others.

The parties candidly have reduced the argument to two classes of items. One class consists of reels, on which large aluminum cables are wound, and spools on which small aluminum wire is wound; and the other class is that of steel balls for ball machines. The decree held that these items are not subject to the use tax. Therefore, we shall confine our discussion to those items.

In the argument of counsel the same principles are treated as applicable to the reels and spools, and we shall so treat them in this discussion.

The taxpayer is a manufacturer in this State engaged in the manufacture of tangible personal property for sale, consisting, so far as new material, of aluminum cables and wires. The cables are large wire products used mainly for transmission of electric current by electric power companies who are presumably consumers. The small wire is used for purposes not specified. The taxpayer does not use or consume any of such products produced by it, but such products are sold to consumers. The reels and spools are purchased by the taxpayer outside of the State, shipped to and stored by the taxpayer. The wire which is produced cannot be successfully disposed of unless it is wound on such reels and spools. Upon a sale of the wiring there is an accompanying invoice on which is separately listed the amount and price of the wire or cable and the number and price of the reels and spools. The purchaser pays the amount of the combined invoice. There is an notation at the foot of the invoice to the effect, in substance, that the empty reels or spools may be returned within eighteen months if in good condition: the taxpayer paying the return freight charges and allowing credit for the full amount which had been charged and paid. The taxpayer makes no profit on the transaction with reference to the reels and spools. When they are returned they are rewound and again disposed of as before, and this process continues as

## PER CURIAM.

This is an appeal by the State from a decree in equity on a ruling from a use tax assessment made by the State Department

often as they are available and suitable for such use.

■ The taxpayer claims that its purchase is at wholesale and not subject to the use tax provided in section 788, Title 51, Code, imposed upon the storage, use or consumption of tangible personal property bought at retail outside of the State and stored, used or consumed within the State. Paramount-Richards Theatres, Inc., v. State, 252 Ala. 54, 39 So.2d 380. The tax is not levied on the storage, use or consumption in this State of tangible personal property bought at wholesale outside of the State and stored, used or consumed within the State, as defined.

■ Section 787(d), Title 51, Code, defines a wholesale transaction within the meaning of the tax levy. It includes (1) purchases sold by wholesalers to licensed retail merchants and jobbers, dealers, or other wholesalers for resale; but not those to be resold by wholesalers to consumers not for resale. It also includes (2) the sale of tangible personal property to a manufacturer or compounder, which enters into and becomes an ingredient or component part of the manufactured or compounded product for sale and "the furnished container and label thereof". So that when a manufacturer or compounder of tangible personal property produces his product and purchases a container and label for it, all for sale, the process of doing so constitutes the transaction a wholesale sale in respect to the material which enters into it and the container. Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796.

The first aspect of the statute requires the sale to be made to licensed retail merchants, jobbers, dealers and other wholesalers for resale. The circumstances here described do not come within that aspect of a wholesale transaction because it does not involve a sale by a wholesaler to a licensed retail merchant, jobber, dealer or other wholesaler. The second aspect includes a sale to a manufacturer or compounder of tangible personal property which enters into and becomes an ingredient of the manufactured or compounded product and the container

and label thereof furnished by the manufacturer or compounder, all for resale. Alabama-Georgia Syrup Co., supra; Poer v. Curry, 243 Ala. 76, 8 So.2d 418.

The problem confronting us is whether the reels and spools are containers which the taxpayer as a manufacturer of cables and wire uses in the completed unit and sells along with the cables and wires, or has them for sale. That problem, as its statement indicates, has two features which we will treat in the inverse order. The first feature, therefore, is whether those reels and spools are purchased by the taxpayer *for sale* as containers of the cables and wires. The taxpayer contends that the circumstances herein recited show that in making a sale of the cables and wires there is also a sale of the reels and spools. The State contends that a sale is not shown but only a plan by which the taxpayer is assured of a return of its property which, in substance and reality, always remained the property of the taxpayer. Both contentions are supported by good authority and logic.

On the part of the State counsel cite the case of District of Columbia v. Seven Up Washington, 93 U.S.App.D.C. 272, 214 F.2d 197, which is very much in point. It is there held that the substance of such transaction is not a sale but intended to insure a restoration of the property to the taxpayer and, therefore, the transaction for the purchase of the containers was at retail and their use subject to the tax. But there was an exclusionary provision which was not intended for the exemption to apply merely because, as between respondents and their customers, a sale of the containers occurred. Such an exclusionary provision is likewise emphasized in Gay v. Canada Dry Bottling Co., Fla., 59 So.2d 788, 790. In those cases the courts were dealing with an exemption in which the strict construction is against the taxpayer. It was held that the mere passing of the title to the consumer is not the sole criterion of whether it is a sale as there contemplated; and that it was not a purchase by one who wanted the container for his own use or to resell. The purchaser had no use

for it and presumably bought it only because it was necessary in order to acquire its contents. The decision was largely governed by another statute limiting the exclusion to containers "intended to be used one time only". In this connection see the case of Consumers Co-op. Ass'n v. State Commission of Revenue & Taxation, 174 Kan. 461, 256 P.2d 850, in which the same reasoning is used, also emphasizing the language of the exemption provision in the statute.

■ On the other hand, we are not here dealing with a strict exclusionary exemption to be construed most favorably in the interest of the State. We are construing the meaning of a tax levy. It is only applicable when the property used in this State was bought at retail in another state. Our problem is to apply the term "retail". This is defined as all sales of tangible personal property except those defined as wholesale. Section 787(e), Title 51, Code. We do not look to the definition of a "wholesale sale" as an exemption, but to articulate the meaning of a retail sale. The strict construction is against the State. Paramount-Richards Theatres, Inc. v. State, 256 Ala. 515(2), 55 So.2d 812; Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796; State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886; State v. Olan Mills, Inc., 258 Ala. 303, 63 So.2d 796.

Our statute defining a sale as set out in the Uniform Sales Act of the Code, Title 57, section 25, Rule 3(1), confirms the contention that the transaction is a sale. That statute is as follows:

"When goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time."

That principle existed without the statute. Foley v. Felrath, 98 Ala. 176, 13 So. 485.

In the case of Consolidated Paper Co. v. Nims, 306 Mich. 216, 10 N.W.2d 833, under circumstances similar in legal effect to those here involved, the court held that the transaction was a sale within the contemplation of such a tax levy referring to the definition in the Uniform Sales Act, supra. The same situation was so construed in Goebel Brewing Co. v. Brown, 306 Mich. 222, 10 N.W.2d 835, another Michigan case. Likewise, the theory was upheld in the following cases: Commonwealth of Mass. v. Brandon Farms Milk Co., 249 Mass. 531, 144 N.E. 381, 35 A.L.R. 780; Coca Cola Bottling Plants v. Johnson, 147 Me. 327, 87 A. 2d 667; Dewey Portland Cement Co. v. Crooks, 8 Cir., 57 F.2d 499; La Salle Cement Co. v. Commissioner of Internal Revenue, 7 Cir., 59 F.2d 361; Buck v. Com'r of Internal Revenue, 9 Cir., 83 F.2d 627.

■ We agree with the trial court that the circumstances here shown manifest a purpose to resell the reels and spools when the taxpayer buys them and does resell them in the transactions that follow. Therefore, that feature of the controversy is favorable to the taxpayer.

We shall now consider another feature of the controversy, that is, whether the reels and spools should be classified as containers for the purposes contemplated by the statute. We are mindful of the general definition of a container.

■ We repeat that this is a tax levy, not an exemption and, therefore, the law should be liberally construed in favor of the taxpayer. Paramount-Richards Theatres, Inc. v. State, 256 Ala. 515(2), 55 So.2d 812; Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796; State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886. We think the term "container" should be held to include the reels and spools necessary to make the cables and wires marketable, and in a sense "contain" them. Their use, storage or consumption in this State should not therefore be considered taxable under the use tax statute. Section 788, Title 51, Code.

### Steel Balls.

The other feature of the controversy involved on this appeal is whether certain described steel balls are exempt from the use tax. The exemption is set up in section 789, Title 51, and as amended is set out in the pocket part of the Code as subsection (p), formerly (q), but with no difference in meaning. It is as follows:

"Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing, or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

The bill alleges and the agreed facts admit that "when a pot is dismantled the pot lining is put through a reclamation process by * * * (the taxpayer) for the purpose of reclaiming the cryolite in the lining. This lining is removed from the pot and is put through a hammer mill and then through a ball mill and thereafter is put into solution with certain chemicals and this solution is pumped from one phase of the process to another". The agreed facts further show that the balls "are bought prefabricated and are used as replacements for balls used in the ball machine. This is a machine in which the balls and used pot lining material are rotated together in such a way that the balls pulverize the material. The material is then put into chemical solutions which are circulated by electric pumps. The reclaimed cryolite is used by * * * (the taxpayer) in the manufacture of aluminum in the process hereinabove set out".

The evidence shows that the balls were bought especially for that machine and were used for no other purpose; that they are customarily so used in such machine and are necessary to its operation and could not be operated without them. The taxpayer does nothing to the balls before using them, but they are used in the condition in which they are purchased and are stored until used.

The taxpayer contends, and the court agreed, that the machinery was used for processing tangible personal property, and the steel balls, purchased by the taxpayer and used in the machine, were a part of the same and were made for use in its operation, and hence necessary for such operation and customarily so used, and therefore exempt. The argument made in brief of counsel for the State is to the effect that the machine here in question is not used to *manufacture* nor *compound* tangible personal property and therefore it is not exempt. But under the provisions of the statute the exemption not only applies when the machine is used to manufacture or compound tangible personal property but also to *process* it. It is true that the definition of a wholesale sale in its second aspect applies only to manufacturers or compounders. That definition is not applicable to the exemption provided in section 789(p), (formerly (q), supra, which includes processing also. The taxpayer does not contend that its purchase of the balls is by a wholesale transaction and, therefore, not covered by the levy which only applies to the use of property acquired at retail sales. The purchase of the balls was undoubtedly at retail under the statutory definition. Their use would be taxable but for the exemption. The exemption applies to machines which process tangible personal property regardless of the use or disposition to be made of it when processed. Curry v. Alabama Power Co., 243 Ala. 53, 8 So.2d 521; State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576; State v. Alabama Gas Corp., 258 Ala. 356, 62 So.2d 454; Southern Natural Gas Co. v. State, 261 Ala. 222, 73 So.2d 731.

The State does not contend that the balls are not such part of the machinery so used as is contemplated by the exemption. In that connection we note the case of Anderson & Sons Co. v. Glander, 154 Ohio St. 561, 97 N.E.2d 29, where it was held that the parts of machinery for processing must have a direct part in it. We are convinced

that here the balls had a direct part in the process. It is our opinion, therefore, that the decree of the trial court should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MAYFIELD, JJ., concur.

83 So.2d 713

### STATE
v.
### REYNOLDS METALS CO.
8 Div. 812.

Supreme Court of Alabama.

Nov. 28, 1955.

John Patterson, Atty. Gen., and Willard W. Livingston and H. Grady Tiller, Asst. Attys. Gen., for appellant.

Clopper Almon, Sheffield and Mitchell & Poellnitz, Florence, for appellee.