101 So.2d 310

**LaRue HORN, Commissioner of Revenue,**

v.

**GOLDENROD ENTERPRISES, Inc., d/b/a Pepsi-Cola Bottling Co.**

3 Div. 808.

Supreme Court of Alabama.

March 6, 1958.

John Patterson, Atty. Gen., and Willard W. Livingston, Asst. Atty. Gen., for appellant.

Hill, Hill, Stovall & Carter, Montgomery, for appellee.

PER CURIAM.

This is an appeal by the State from a decree in equity to the effect that appellee is not properly chargeable with the use tax imposed by Title 51, section 787 et seq., Code.

The tax is laid when there is a purchase of personal property *at retail* in some state other than Alabama and brought into Alabama and there stored for use or other consumption, but not for resale. Section 788, Title 51, Code.

Section 787(d), Title 51, Code, defines a wholesale sale as follows:

"The term 'wholesale sale' or 'sale at wholesale' means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers not for resale. The term 'wholesale sale' shall include a sale of tangible personal property or products * * * to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof."

It is therefore a wholesale sale, and not taxable, when it is of personal property sold to a compounder and which enters into and becomes an ingredient or component part of the tangible personal property the taxpayer compounds *for sale*, including the furnished container and label thereof.

The crucial question in all such cases has been made to depend upon whether the taxpayer, the bottler here, who buys the bottles out of the State does so for resale, or whether the bottles become "furnished containers". That requires a consideration of the exact status in that respect of the transaction between the bottler as a compounder of bottled drinks and his retailer of them.

The case of Poer v. Curry, 243 Ala. 76, 8 So.2d 418, 421, is very much in point. But there the Court was dealing with crowns, caps or tops of bottled drinks, not with the bottles. However, the Court observed: "Admittedly, if appellant furnished the bottle with the soft drink manufactured, and sold the entire unit to the retail merchant, the bottle would constitute the 'furnished container'. *But, here the bottle is returned, not sold.*" (Italics supplied.) So that the question of fact in each case, according to the Poer case, is whether the retailer purchases from the bottler the entire unit of the bottled drink. The trial court in the Poer case undoubtedly found that the entire unit, including full ownership of the empty bottles, was not sold to the retailer, but that the bottles were returned—not sold. This Court on appeal in that case reached the same conclusion. There was nothing to show that the retailer could exercise full control of the empty bottles or could sell

them to any other person for cash. He could only return them to the bottler for credit.

In the case of State v. Reynolds Metals Co., 263 Ala. 657, 83 So.2d 709, the same question was involved. The Court was dealing with aluminum cables and wire wound on reel and spools. On appeal the Court found that the reels and spools were in essence containers, but in the transaction of the sale of the cable and wire the reels and spools were also sold. They were charged separately on the invoices furnished the purchaser with the price separate from the price of the cables and wire. There was no duty or obligation to return them to the seller which was a manufacturer. On the invoices there was a statement that the empty reels or spools may be returned within eighteen months if in good condition and a credit allowed for the full amount which had been charged and paid. In that case we referred to the fact that decisions throughout the nation took different views as to the effect of such stipulations. Some hold that a sale is perfected of the reels and spools, and some that the process is a scheme by which the manufacturer is assured of a return of his reels and spools, the ownership not having passed. In the Reynolds case we took the view there was a sale. This view was not thought to be in conflict with the Poer case, supra, which is cited. In the Poer case there was no such agreement specified on the invoices as in the Reynolds case. We thought that when parties make an express stipulation as to what their contract is, there being no question of fraud involved, the Court should treat it as it is expressed. That expression did not conflict with other facts and inferences which developed in the case. Under it there was no obligation on the part of the purchaser of the cables, wires and their containers to return the containers. The transaction merely extended to the purchaser an option to sell the reels and spools to the manufacturer to be exercised within eighteen months, and then only if they were in good condition.

In the instant case there are no expressed stipulations either verbal or written. There was only one witness, the president of the corporation here sought to be taxed. He testified, *inter alia,* as follows: That when his company sells a case of bottled drinks to a retail merchant he is supposed to be informed that this company will repurchase those bottles and the flat or case for 50¢, which includes 40¢ for twenty-four bottles 10¢ for the flat. It is generally so understood in the trade when a case of Pepsi Cola is sold. His company also repurchases empty bottles without the flat (or case) in any quantity, and pays cash at the rate of 5¢ for three empty bottles, or 40¢ for twenty-four bottles. That it makes no difference whether those empty bottles originated at the company's plant. The bottles might come from any place in the various cities of the United States, and though his company had never seen them before. If they are in usable condition and are standard Pepsi Cola bottles the company will purchase them at that price from anyone. The company has purchased bottles many times that originated in other places. The bottles carry a label showing where they originated, but that does not affect the purchase of them. There is no provision in any contract, oral or written, whereby the company reserves the right to repossess the bottles which contained the drink. The company has nothing to do with the arrangement or custom of the retailer whereby in retailing a bottled drink the retailer reserves the empty bottle. So far as the company is concerned such purchaser can do as he pleases with the empty bottle. The company has no control over bottles after they leave the plant, insofar as it affects a repossession. The company pays cash for bottles presented to it by anyone regardless of whether they have an account. The company has a ledger sheet in its books called the "bottle sales account". The bookkeeper debits the account with all bottles purchased and credits it with all bottles sold which leaves a net of either debit or credit. This shows the number of bottles sold during each month in the year, and the number of

bottles repurchased during each month from the trade and every other source. "Our income tax returns reflect the profit or loss as the case might be for the year."

On cross examination, Mr. Ware, the president of the company, also testified: In the franchise agreement with the parent company it is provided that the bottler will sell the bottled Pepsi Cola in his territory at the bottler's price per case plus the deposit charge for bottles and case. The company from time to time may suggest to the bottler the price per case to be charged by him and the amount of the deposit charge. The company sells a case of bottled Pepsi Cola to a retailer billed out to him at $1.46, of which 96¢ represents the beverage—the contents of the bottle, and 40¢ represents a charge for the bottles and 10¢ for the flat or case. That charge is referred to in various ways all over the country. Mr. Ware testified he is not from Montgomery but came from New Orleans where they refer to it as a "deposit and all kind of things", depending entirely on how the individual company operates. A charge of 10¢ is made for the empty flat which is a part of the $1.46 charge for a case of twenty-four bottled drinks. The company bills it out at those combined figures.

The president of the company also testified that the company pays at the rate of 7¢ each for new bottles and 86½¢ each for the new flats or empty cases, and that for a case of twenty-four new bottles the company pays for the bottles and case $2.54½¢, and sells a case of bottled drinks including the bottles and contents for $1.46. That would be a losing process if the company had to use new bottles and flats to make all sales; but since it can repurchase the used bottles at 40¢ for twenty-four and 10¢ each for the flats, it makes a profit. The primary business is selling drinks and not bottles. As to the arrangement and custom of retailers in handling the empty bottles, the company has nothing to do. Ownership of the bottles is not retained under any agreement with the bottler. The retailer can do as he pleases. . The bottler must be able to re-

purchase used bottles to stay in business. On redirect examination, Mr. Ware testified that the used empty bottles are frequently used for other purposes and never returned to the bottler. There is nothing in the franchise which makes it mandatory to receive a deposit for empty bottles. That the parent company makes no requirement in this respect and has told the retailer he could sell the bottles if he pleases.

The trial court found that complainant (taxpayer) purchases bottles from suppliers outside the State for resale and that it does resell said bottles to merchants and other handlers of carbonated beverages for resale to the consuming public. The judge further found that the bottles constitute the furnished container for the beverages manufactured and compounded by the complainant, and that the purchases of the bottles from outside the State constitute purchases at wholesale within the meaning of our statute, supra, and therefore are not subject to the use tax.

The same trial judge heard and decided the Poer case, supra. He reached a different result in the instant case. We think this was for the reason the facts and circumstances which have controlling importance are different in the two cases.

We have read many cases which are supposed to be pertinent to the question here involved, but we think they shed no light on it because of the difference in material facts there considered. We cite some of them: State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886; Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796; State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824; Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812; State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576; State v. Progressive Farmer Co., 257 Ala. 564, 60 So.2d 144; State v. Olan Mills, 258 Ala. 303, 63 So.2d 796.

The opinions on the subject by the courts of other states are conflicting, particularly because of different terms used in the statutes. Some hold that the transaction is not

a sale of the bottles,—Gay v. Canada Dry Bottling Co., Fla., 59 So.2d 788, which is based largely on the particular terms of an amendment to the statute (exempting containers usable one time only); District of Columbia v. Seven-Up Washington, 93 U.S.App.D.C. 272, 214 F.2d 197, which is based on the terms of a statute different from ours in material respects. While some other courts hold that the bottle is a furnished container and not subject to the tax,— Coca Cola Bottling Plants v. Johnson, 147 Me. 327, 87 A.2d 667. This latter case differentiates the Florida case, supra, on account of its peculiar terms. The case of Goebel Brewing Co. v. Brown, 306 Mich. 222, 10 N.W.2d 835, is directly in point here.

We are asked to revise our opinion in the Reynolds Metals case, supra, for the failure to consider that feature of section 787(j) which specifies the "sales price shall not include the amount charged for property returned by customers when the entire amount charged therefor is refunded either in cash or by credit". It is true that feature of the statute was not mentioned in the opinion but doubtless was not overlooked. We must have thought that it did not apply for we were not dealing with the amount of the "sales price" referred to in section 787(j), supra. In the Reynolds case, as in the instant case, we were construing and applying the term "wholesale" to determine whether the facts developed showed a wholesale sale and not taxable under section 788, the "use tax", supra.

■ If it is found to be a sale of bottles by this taxpayer to its retailer, either as a separate item or as an integral part of a unit (not merely a use of the bottles by him), the transaction by which the taxpayer acquired the bottles is a wholesale sale and it is not subject to the use tax. The "sales price" as defined in section 787(j) becomes material only when the transaction is a retail sale. But that definition is not material to determine whether it is a retail sale.

We see no application of section 787(j), supra, to the question of whether there is a sale of the bottles in the taxpayer's transaction with his customer. If the legislature had intended to attach the above mentioned clause to the definition of a wholesale or retail transaction it would have done so. But the definition of those terms is definitive as expressed, and will be so interpreted.

■ The result depends upon an inference of fact from the circumstances. That is, whether they show that a sale of the bottles as furnished containers was intended. The finding of the trial judge, without a jury, is of the same character as the verdict of a jury. We think the trial judge was justified by the evidence in finding as he did and, therefore, his decree should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LAWSON, SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.