**LIBERTY MUTUAL INSURANCE COM-PANY, Appellant,**

v.

**Walter Gene GWIN, Barto L. Brown, Jr., and Earl W. Brown, d/b/a Mobile Supply Company, Appellees.**

**No. 22910.**

United States Court of Appeals Fifth Circuit.

Dec. 27, 1966.

Thomas E. Twitty, Jr., Inge, Twitty, Duffy & Prince, Mobile, Ala., for appellant.

W. Borden Strickland, Mobile, Ala., for appellees.

Before TUTTLE, Chief Judge, and THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellee, Mobile Supply Company, instituted this action for declaratory judgment seeking a determination of coverage as the named insured under a comprehensive general liability policy issued by appellant, Liberty Mutual Insurance Com-

12. Ibid.

pany. The trial court entered judgment in favor of Mobile Supply, ruling that under the facts of the case coverage was not excluded by the "Exclusion of Products and Completed Operations Hazards" endorsement contained in the policy. We conclude that the trial court erred in this determination for the reasons hereinafter developed.

The pertinent facts underlying this controversy are undisputed. Appellee is engaged in the business of selling heating and air conditioning equipment, including gaseous refrigerants used in servicing air conditioning and refrigeration equipment. Appellee does not manufacture the refrigerants it sells, but purchases the gases in pressurized cylinders of various sizes from concerns engaged in the business of manufacturing such refrigerants. As a matter of established practice, these manufacturers require distributors such as appellee to pay a deposit of $12 per cylinder, which is refundable when the empty cylinder is returned to the manufacturer. The distributors are not obligated, however, to return the cylinders, and in the event a cylinder is not returned the manufacturer simply retains the deposit. Similarly, the distributors, including appellee, require their customers to pay, in addition to the gas, a deposit of $12 per cylinder which is also refundable if and when the customer returns the empty cylinder. As in the case of the distributor, the customer is under no obligation to return the cylinders. It is standard practice in the trade for distributors to accept a return of empty cylinders and to refund the $12 deposits regardless of the source from which the customer acquired the cylinders and regardless of the manufacturer who produced them. Likewise, any distributor may return an empty cylinder in good condition to any manufacturer and receive the standard $12 deposit, even though the distributor may not deal in that particular line of refrigerants. The manufacturers then reuse those cylinders which are in good condition.

It is not unusual for one of appellee's customers to have need for an empty cylinder to be refilled by the customer at his own place of business, and in such case, the customer can obtain an empty cylinder from appellee simply by paying the standard $12 deposit. Thus, regardless whether the cylinder is empty or full, the transaction is handled on the same refundable deposit basis—the customer may either retain the cylinder or return it for the deposit.

In June 1960, Mobile Gas Service Corporation, one of appellee's customers, paid the standard $12 deposit and procured an emply cylinder from appellee, after which time appellee had no further connection with the cylinder. After acquiring the empty cylinder, Mobile Gas Service Corporation changed the valve and filled the cylinder with ammonia gas for use in servicing refrigeration equipment. The cylinder, as modified, was used by Mobile Gas for approximately two years, during which time it was filled and refilled by Mobile Gas numerous times. In July 1962, however, the cylinder exploded, apparently as a result of exposure to the heat of the sun, injuring one Leon Phillips, an employee of Mobile Gas. In July 1963, Phillips instituted in the Alabama state courts a personal injury action against appellee, E. I. Dupont de Nemours & Company, and Kennic Chemical Company, the latter two defendants being the manufacturers and distributors of the cylinder. In November 1963, appellee commenced a suit in the Alabama state court seeking a declaratory judgment that appellant Liberty Mutual had a duty to defend and indemnify appellee against Phillips' claim and any judgment that might be obtained against appellee. The controversy was subsequently removed to the United States District Court for the Southern District of Alabama on the basis of diversity of citizenship.

The insurance policy in issue is styled "Comprehensive General Liability Policy" and contains the usual insuring agreements against bodily injury and property damage, various exclusions, dec-

larations and conditions, and certain endorsements. Included among the endorsements is an "Exclusion of Products and Completed Operations Hazards," the interpretation of which represents the critical issue in this controversy. The endorsement provides in pertinent part as follows:

> (c) Products Hazard—The term "products hazard" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the injury, sickness, disease, death or destruction occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such injury, sickness, disease, death or destruction occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 4 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold.

> &ast; &ast; &ast; &ast; &ast; &ast;

> 3. The policy does not apply to the products hazard &ast; &ast; &ast; as defined herein.

It is undisputed that the injury was sustained away from appellee's premises, and the crucial inquiry thus becomes whether the cylinder in question constituted "goods or products manufactured, sold, handled or distributed" by appellee under the products hazard exclusion.

In defense of the trial court's conclusion that the cylinder was not a good or product sold, handled, or distributed by appellee within the meaning of the endorsement, appellee contends that since the empty cylinder was acquired on a refundable deposit basis, the title remained in the manufacturer and appellee thus

transferred only a possessory license. Appellee further urges that the term "goods and products" is limited to items sold by appellee or at least acquired to be sold as an integral part of its merchandise. It is asserted that the cylinder in its empty form cannot of itself constitute a good or product, and being empty, cannot be viewed as a container of the good or product which it normally carries.

 Having carefully considered the merits of appellee's contentions, we are nevertheless convinced that the transaction before us was in substance the sale of a good or product within the meaning of the products hazard exclusion of the policy. A review of Alabama law, which governs in this diversity action, indicates that a refundable deposit transaction such as the one here involved constitutes a sale of goods. The Alabama Sales Act defines goods as including "all chattels personal other than things in action and money." Ala. Code tit. 57, § 1 (1960). A sale may be absolute or conditional, § 7(3), and the property in the goods sold passes to the buyer at such time as the parties intend, such intent being determined by the terms of the contract, the conduct of the parties, usages of trade, and the circumstances of the case. § 24(1)-(2). The Act further provides that "[w]hen goods are delivered to the buyer 'on sale or return,' or on other terms indicating an intention to make a present sale, but to give the buyer an option to return the goods instead of paying the price, the property passes to the buyer on delivery, but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or, if no time has been fixed, within a reasonable time. &ast; &ast; &ast; " § 25, rule 3(1). In State v. Reynolds Metals Co., 1955, 263 Ala. 657, 83 So.2d 709, the Alabama Supreme Court was called upon to apply these provisions to a transaction similar to that in the instant controversy in a case involving tax liability. The taxpayer was engaged in the manufacture and sale of aluminum cable and wiring. The cable and wiring were sold on reels and spools

which the taxpayer had purchased out of the state. Upon each sale of the cable and wiring, the accompanying invoice listed the price of the reels and spools separately from the price of the cable and wiring. Although the purchaser paid the total amount shown on the invoice, a notation at the bottom of each invoice provided that if the empty spools or reels were returned in good condition within eighteen months the purchaser would be credited for the amount paid for the spools and reels. The taxpayer made no profit on the spools and reels; however, in the event they were returned, they were reused as long as they remained in suitable condition. Accordingly, the taxpayer contended that there had been a sale of the spools and reels as well as the cable and wiring, and since it had purchased the spools and reels for resale they were not therefore subject to the state use tax. In opposition, the State argued that no sale of the spools and reels had occurred and that the transaction in substance constituted a scheme whereby the taxpayer would be assured the return of its property, title to which at all times remained in the taxpayer. In resolving the issue in favor of the taxpayer, the Alabama Supreme Court reasoned that a sale of the spools and reels had occurred within the contemplation of Section 25, Rule 3(1) of the Sales Act, supra, and further recognized that

the same result would have been forthcoming even without the statute. See also Buck v. Commissioner of Internal Revenue, 9th Cir. 1936, 83 F.2d 627; Commonwealth of Massachusetts v. Brandon Farms Milk Co., 249 Mass. 531, 144 N.E. 381, 35 A.L.R. 780.

■ We are of the opinion that the reasoning adopted by the Alabama Supreme Court in *Reynolds Metals Co.* governs the instant controversy. It is undisputed that appellee, as a matter of convenience to its customers, distributed the cylinders independently of the refrigerants. The empty cylinders, under such circumstances, clearly fall within the definition of "goods," which are defined by the Act to "include all chattels personal other than things in action and money." § 1. Moreover, to view the instant trade practice as involving the mere transfer of a possessory license in the empty cylinder rather than a sale is to disregard the realities of the transaction.[1] Upon paying a deposit, a customer could obtain from appellee an empty cylinder entirely free from any further control by appellee, and free from any obligation to return it. Obviously, neither party attributed any significance to the legal technicalities of retention of title. The customer understood that he could use the empty cylinder as he wished; he could, if he chose, throw it away without incurring any further obligation

[1]. Appellee relies heavily upon the case of Liberty Mut. Ins. Co. v. Hercules Powder Co., 3rd Cir. 1963, 224 F.2d 293, 54 A.L.R.2d 513, where the court ruled that a similar endorsement did not exclude policy coverage. In that case the insured, while engaged in a program of experimental research, had delivered an aluminum tube to an electro-chemical company for additional processing, after which time it was to be returned to the insured. In the course of additional processing at that company, the tube exploded. Determining that coverage was not excluded under the endorsement with regard to the claims arising out of the explosion, the court reasoned that such endorsements were intended to avoid the type of products liability first developed in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.

1916F, 696. The court concluded that such liability was clearly not in question since the tube had not been sent "into the channels of trade for use by others," but remained, at the time of the accident, a chattel owned by the insured to be returned to it at the completion of the processing. In view of such retention of ownership, the court ruled that the tube was not "manufactured, sold, handled or distributed" by the insured within the meaning of the exclusionary endorsement. In the case before us, however, the injured party's claim is plainly couched in terms of products liability in the *MacPherson* sense, and having concluded that the transaction involving the empty cylinder did, in fact, constitute a sale under Alabama law, we find the reasoning adopted by the court in *Hercules* inapplicable to the facts of this case.

to appellee or the manufacturer, or he could replace the valve and fill the cylinder with any type of refrigerant he wished, as was done in the instant case.

In light of these facts, we conclude that the empty cyclinders represented goods or products sold by appellee within contemplation of the products hazard endorsement of the policy issued by appellant, and that the personal injury claim arising from such sale is therefore effectively excluded from coverage. Accordingly, the judgment of the district court in favor of the insured is reversed.