437 F.2d 48
 TRANSAMERICA INSURANCE COMPANY, Plaintiff-Appellant,
v.
J. HUNGERFORD SMITH COMPANY, Inc.,
Defendant-Appellee-Appellant, and American Mutual
Liability Insurance Company, Defendant-Appellee.
J. HUNGERFORD SMITH COMPANY, Inc., Defendant-Appellant and
Cross-Appellee,
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY,
Defendant-Appellee, and Transamerica Insurance
Company, Plaintiff-Appellee and Cross-Appellant.
 Nos. 20502, 20503.
 United States Court of Appeals, Sixth Circuit.
 Jan. 27, 1971.
 
 Ralph W. Farmer, Dyersburg, Tenn., for Transamerica Ins. Co.; M. Watkins Ewell, Sr., Ewell & Ewell, Dyersburg, Tenn., on brief.
 Lawson F. Apperson, Memphis, Tenn., for J. Hungerford Smith Co., Inc., and others; Martin, Tate, Morros & Marston, Memphis, Tenn., on brief.
 Thomas H. Rainey, Jackson, Tenn., for American Mutual Liability Ins. Co.; Spragins, Menzies & Rainey, Jackson, Tenn., on brief.
 Before WEICK, CELEBREZZE and PECK, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 The controversy in this case is between two liability insurance companies which issued large policies of insurance to Smith. Each claims that the other is liable to pay the damages sustained by him. There can be no question that one of them is liable.
 
 
 2
 Smith, the insured, was engaged in the manufacture of fruit syrups and flavoring for soda fountains and the ice cream industry. In the regular course of his business he manufactured a product known as 'Finished Orange Oils' and stored it in metal 55-gallon drum containers. Finished Orange Oils contained about 90% Alcohol. When the oils were placed in the containers they were marked 'Finished Orange Oils.' After using the orange oils in the making of syrups and flavoring, Smith had no further use for the empty drums and stored them in the rear of his plant, and eventually sold them to the public for two dollars each. Funds derived from the sale of the drums, amounting to around $1,000 to $1,400 annually, over a period of about seven years, were placed in his employees' activity fund.
 
 
 3
 Smith sold two of the drums to Earl C. Murphy. Charles E. Murphy, Earl's son, took them to a blacksmith, to have holes perforated in them with a blowtorch. One of the drums exploded, seriously injuring young Murphy. He brought suit against Smith in the District Court to recover damages for serious personal injuries sustained by him.
 
 
 4
 Smith notified each of the insurance companies of the accident and demanded that they defend him. Transamerica accepted the defense under a nonwaiver agreement. American Mutual refused to defend.
 
 
 5
 The day before the trial-date of the Murphy personal injury case in the District Court, Transamerica decided that its policy did not cover the accident and notified Smith, who employed counsel and defended the action. Murphy recovered a verdict and judgment against Smith in the amount of $45,000. Smith appealed, and during pendency of the appeal he settled the judgment for $37,500, and the appeal was dismissed.
 
 
 6
 Transamerica then brought the present action in the District Court for declaratory judgment against Smith and American Mutual. The District Court entered summary judgment against Transamerica for the amount of the settlement plus attorneys' fees, holding that it, and not American Mutual, was liable. Transamerica and Smith appealed, the latter being a protective appeal. We affirm.
 
 
 7
 American Mutual's coverage was by a Comprehensive General Liability Insurance Policy which was designed to protect Smith in the operation of his business. The policy, however, expressly excluded from coverage hazards described as 'Products Hazards'. Transamerica's policy insured Smith against products hazards.
 
 
 8
 The pertinent provisions of Transamerica's policy defined products hazards in substantially the same language as was contained in American Mutual's policy excluding such coverage. It provided:
 
 
 9
 'The term 'products hazard' means:
 
 
 10
 '(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification includes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold; * * *.'
 
 
 11
 Transamerica contends that Smith's principal business was the sale of syrups and flavoring, and that the sale of discarded drums was not the sale of any of his products. The trouble with this contention is that the term products hazards is broadly defined as 'goods or products manufactured, sold, handled, or distributed by the named insured * * * provided such goods or products shall be deemed to include any container thereof * * *.'
 
 
 12
 The drums were certainly 'handled' or 'sold' by Smith. The policy does not restrict coverage to goods principally manufactured and sold by Smith; it covers all goods handled or sold. Furthermore, the policy expressly covers containers. Where a policy written by an insurance company provides in plain language broad coverage, under no rule of construction of which we are aware would we be justified in restricting such coverage after the insured, who paid a premium for the coverage, sustained a loss.
 
 
 13
 We do not think the use of the proceeds of sale by Smith was material.
 
 
 14
 In our opinion, the District Court was correct in granting summary judgment in favor of Smith. Liberty Mutual Ins. Co. v. Gwin, 370 F.2d 297 (5th Cir. 1966), cert. denied 388 U.S. 910, 87 S.Ct. 2110, 18 L.Ed.2d 1347.
 
 
 15
 The judgment is affirmed in each appeal. Costs are assessed against the appellant in each case.