PITTMAN, Judge.
This appeal is taken from a judgment of the Jefferson Circuit Court reversing an order issued by an administrative-law judge of the Alabama Department of Revenue (“the Department”) that upheld an assessment of state and certain local[1] use taxes against Logan’s Roadhouse, Inc. *404 (“the taxpayer”), as to its wholesale purchase of peanuts consumed by customers at several restaurants operated by the taxpayer in Alabama. The case came before the trial court after the taxpayer, pursuant to Ala. Code 1975, § 40-2A-9(g), appealed to that court from the Department’s order and sought a trial de novo in the manner contemplated by the statute. In its judgment, entered after an ore tenus proceeding at which the trial court received evi-dentiary exhibits and heard testimony from the taxpayer’s regional manager, the trial court aptly summarized the material question to be answered:
“The issue presented for the Court’s decision is whether ... the taxpayer[ ] is liable to the State of Alabama for the payment of use tax when it purchases peanuts from wholesale suppliers. If the taxpayer sells the peanuts to its customers, then the use tax is not due on the wholesale transaction, because there is an applicable sales tax. If [the taxpayer] does not resell the peanuts to its customers, then the use tax is due to be paid.”
Our review is governed by the following principles:
“ ‘When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. ... Moreover, “under the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.” However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment. “Questions of law are not subject to the ore tenus standard of review.” A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. This court reviews the application of law to facts de novo.’ ”
HLH Constructors, Inc. v. State Dep’t of Revenue, 902 So.2d 680, 683-84 (Ala.Civ.App.2004) (citations omitted; quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002), quoting in turn other authorities).
The evidentiary exhibits and the testimony of the taxpayer’s manager presented at trial indicate that the taxpayer operates a number of “full service” restaurants in Alabama and other nearby states at which diners typically consume lunch and dinner entrees consisting of beef, chicken, fish, and shellfish as well as salads, appetizers, and desserts. Most, if not all, of the edible foodstuffs provided to customers of the taxpayer’s restaurants are acquired through wholesale purchases from a single central distribution center operated by Performance Food Groups. The taxpayer’s manager testified that the taxpayer pays no sales tax on such purchases; rather, a sales tax is paid on prepared meals by consumers upon their receipt of a bill at the end of a meal. The taxpayer’s manager specifically testified that certain additional edible items, such as dinner rolls and butter and “tabletop” items (including condiments such as ketchup and mustard and spices such as salt and pepper), are not separately identified or priced in the restaurant’s menu listings, but are similarly acquired by the taxpayer via wholesale purchases and are provided to customers who desire them; according to the manager, those items are similarly deemed sold to customers because the incremental cost of providing those items to each customer is included in the prices charged by the taxpayer for entree items. The taxpayer’s classification of those items as subjects of retail sales to customers has not been chai- *405 lenged by the Department in its audit or in the litigation springing therefrom.
Most pertinent to this case is that the taxpayer, like certain other restaurant operators espousing a “roadhouse” theme, provides quantities of peanuts to its customers by means of receptacles located in restaurant entryways, at drink bars, and on dining tables. Those peanuts, like the other edible items purchased by the taxpayer for consumption in its restaurants, are acquired from its preferred wholesaler. It is undisputed that no sales tax is paid on those purchases, which are deemed wholesale sales. Also, like the taxpayer’s other edible items, peanuts do not appear as a separately priced item in the printed menu price listings distributed to restaurant customers. However, the taxpayer presented evidence to the trial court, in the form of a “menu mix” document that was not presented to the administrative-law judge, that just as 10 cents’ worth of rolls and butter and 6 cents’ worth of tabletop items are priced into each of the taxpayer’s entrees, 9 cents is similarly priced into every entree served by the taxpayer to offset the cost of peanut consumption by restaurant customers. That figure was obtained, according to the taxpayer’s manager, by dividing the entire gross quantity of peanuts acquired by the taxpayer and dividing it by the “guest count” at the taxpayer’s restaurants.
Based upon that and other evidence, the trial court determined that the taxpayer was indeed selling peanuts to customers at its restaurants so as to warrant the taxpayer’s treatment of its peanut purchases as wholesale-sales transactions. Compare Ala.Code 1975, § 40-23-l(9)a. (including “sale[s] of tangible personal property by wholesalers to licensed retail merchants ... for resale” within definition of “wholesale sale” exempted from sales and use taxation), with § 40-23-1(10) (defining “retail sale” as “[a]ll sales of tangible personal property except those ... defined as wholesale sales”). The trial court stated in its judgment:
“[The menu mix] graphically shows that the cost of peanuts is included in the cost of a meal. The evidence show that [the taxpayer] allocates $.09 to each meal for peanuts. While peanuts are not listed on the check paid for by the customer, the customer pays for them and pays a tax on them, whether he knows it or not. A charge for the peanuts is included in the bill paid by the customer.
“In weighing the arguments for and against this issue, the Court sees no legal difference in the roasted peanuts served by [the taxpayer] from many items which a customer receives when he buys a meal at a restaurant; chips and salsa, bread and butter, olive oil, salt and pepper, ketchup, mustard, ice, etc. None of these items are consumed by the restaurant owner nor is the item given away gratis. After all, the restauranteur is in business to make a profit. The cost of these items is simply included in the customers’ bill, even though it is not itemized and the customer may not be aware of it. The peanuts are sold to the customer as a retail sale whether the customer eats them or not.”
In attacking the trial court’s judgment, the Department relies almost exclusively upon the reasoning adopted by the administrative-law judge in the order reviewed by the trial court (to the extent of devoting the bulk of 8 pages of the Department’s 13-page argument to quoting the order). In essence, the reasoning adopted by the Department is that the peanuts consumed by the customers at the taxpayer’s restaurants cannot properly be deemed to have been “resold” to them if they are not separately priced on the menu price list provid *406 ed to customers or are not integral parts of menu items (such as sandwich wrappers or drink containers).
However, under § 40-23-1(9), a definitional tax-levying statute that must be strictly construed against the State (see State v. Reynolds Metals Co., 263 Ala. 657, 661, 83 So.2d 709, 711 (1955)), all that is required for purposes of classifying a bulk sale to a retailer, such as the taxpayer’s purchases of quantities of peanuts, as a nontaxable “wholesale sale” is that a subsequent retail “resale” of tangible personal property occur; there is no statutory requirement for purposes of classifying a sale as a retail sale that a separate price be overtly stated and paid. See Ala.Code 1975, § 40-23-1(10) (“The quantities of goods sold or prices at which sold are immaterial in determining whether or not a sale is at retail”). To treat the taxpayer, a restaurant operator, as liable for use tax based upon its purchase of peanuts in bulk for its customers to consume as a part of their lunch and dinner meals, as the Department suggests be done in this case, would disregard the evidence presented at trial indicating that the taxpayer charges its customers for the average incremental cost of peanuts they aggregately consume. To adopt the Department’s position would also, in our view, undercut the very purpose of sales and use taxation to operate as a consumer’s tax, as to which the ultimate burden must be borne by consumers. See Merriwether v. State, 252 Ala. 590, 593, 42 So.2d 465, 466 (1949).[2]
Our reasoning is consistent with that employed by a North Carolina appellate court in an analogous case, In re Rock-Ola Cafe, 111 N.C.App. 683, 433 S.E.2d 236 (1993), review dismissed, 336 N.C. 68, 441 S.E.2d 551 (1994). In Rock-Ola, the taxpayers purchased peanuts, pretzels, and other snack foods via wholesale sales for consumption by customers who purchased beverages at its restaurant bars; as in this case, the taxpayer in that case did not directly impose a charge for such edible items, but it included their costs and recovered them in customers’ payments for other menu items (as to which sales taxes were collected). The North Carolina taxing authorities, which petitioned the appellate court in Rock-Ola to reverse a trial court’s judgment reversing the assessment of use taxes upon the restaurant operators, contended in Rock-Ola, as the Department contends in this case, that no resales of bar foods had occurred because, it was asserted, the taxpayers’ “customers purchase[d] only the specific meals actually ordered from the menus.” 111 N.C.App. at 684, 433 S.E.2d at 236. After noting the complementary aspects of sales and use taxation, the North Carolina Court of Appeals rejected the taxing authorities’ argument:
“We agree with the taxpayers’ argument that the items here involved are not subject to a use tax because the items were purchased for resale. Sales taxes due on the items are fully paid by virtue of the corresponding increase in each menu-item price for which customers are charged.
“In order for the taxpayers to be liable for payment of a use tax on the various items it must be shown that such items were purchased for purposes other than resale, and that no sales tax was paid when the purchases were made.
*407 “... Petitioners have shown that the respondent taxpayers did not pay a sales tax at the time of purchase, but there is no showing that the items were purchased for purposes other than resale. The taxpayers included, the cost of all the various items in their menu-item prices and collected sales taxes on those prices. This is certainly equivalent to reselling the items.”
111 N.C.App. at 686, 433 S.E.2d at 237 (emphasis added). Compare Broadmoor Hotel, Inc. v. Department of Revenue, 773 P.2d 627 (Colo.Ct.App.1989) (reaching opposite result with respect to snacks provided by hotel operator to patrons at its hotels’ bars after concluding that record did not support lower court’s determination that cost of snacks had been included in prices of beverages sold).
The trial court’s determination in this ease that the taxpayer included the cost of peanuts consumed by its restaurant customers in the prices of the meals sold in its restaurants is supported by substantial evidence, and its legal conclusion that the peanuts were sold at retail to those customers is, therefore, not in error. For that reason, we affirm the trial court’s judgment.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. The parties do not contend that the use-tax ordinances of the local taxing jurisdiction (the City of Oxford) differ in any material way from the use-tax statutes contained in the Alabama Code.

. We need not be long detained by the de minimis prospect that a person might enter a restaurant operated by the taxpayer and consume only peanuts without purchasing an entree. That that possibility is merely hypothetical is borne out by the testimony of the taxpayer’s manager that that “just doesn’t happen,” i.e., that such an event occurs with "minimal” frequency.