## Kentucky Electric Co. v. Buechel, City Assessor.

(Decided February 8, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Municipalities—Ordinance—Exemption of Property From Taxation.—Where a municipality, under a legislative act, and in conformity to a constitutional provision, passes an ordinance exempting from taxation for a certain period new manufacturing concerns that may locate within the city, the exemption applies alike to all manufacturing plants which may choose to avail themselves of the provisions of the act. Hence, a new manufacturing plant that had not theretofore been located in Louisville and that has been established there since the passage of the ordinance, and has complied with the provisions of the ordinance as to notice, etc., is entitled to the benefits of said ordinance, without regard to the reasons by which its promoters were actuated to locate there, or the character of the business it conducts.

2. Same—Electric Light Plant—Is Manufacturing Concern.—An electric light plant, though engaged in the business of a public service corporation, is, under the terms of the act, entitled to the benefits of its provisions. The ordinance exempts only the manufacturing establishment, hence, property of the corporation which is not used in the "manufacturing" business, but to distribute and dispose of its product, is not entitled to the benefits

of the exemption provided for in the ordinance, but, like any other property is subject to taxation.

3. Same—Manufacturing Plant—Concern Engaged in Generating Electricity is.—A concern engaged in the business of generating electricity is a manufacturing plant within the meaning of the constitution, statutes and ordinance in question.

CARROLL & MIDDLETON for appellant.

CLAYTON B. BLAKEY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

The Kentucky Electric Company is a Kentucky corporation, organized to engage in the manufacture and sale of electricity in the City of Louisville. In 1906 it obtained a franchise from the city, permitting it to use the streets thereof for its conduits, poles and wires, used in the distribution of electricity to its patrons throughout the city. At or about the same time it constructed a large plant and began to actively carry on its business.

The City Assessor was proceeding to assess its property for taxes, and, conceiving that, under section 170 of the Constitution, section 2980-a of the Statutes, and an ordinance approved by the General Council of the City of Louisville July 29, 1898, its property was exempt from taxes, it sought by suit to have the assessor enjoin from assessing its property in the city of Louisville. Upon hearing the trial court refused to grant the injunction, upon the ground, that while the appellant was a new business or enterprise in the City of Louisville, it was not a manufacturing plant within the meaning of the State law and the ordinance of the City of Louisville passed to carry it into effect, whereby new manufacturing plants located in Louisville are exempt from taxation for a period of five years. Appellant's petition being dismissed, it seeks a reversal here.

Three questions are raised upon appeal. First, is appellant a manufacturing plant; second, if so, is there anything in the language of the statute or the ordinance denying it the benefit of the exemption; and third, if it is entitled to the exemption, how much of appellant's property is covered by the words "manufacturing establishment" as used in the ordinance.

For the city it is insisted that, as electricity cannot be manufactured, appellant is not and never has been

conducting a manufacturing plant or business within the meaning of these terms as they are generally understood. Some authority is cited in support of this contention, the one most directly in point being that of Williams vs. Warren, 72 N. H. 305, where the court held that because it did not know what electricity was, it was unwilling to say that, simply because machinery and manual labor were used in the process of producing it, it was a manufactured product. The case of Muir vs. Samuels, 110 Ky. 605, is cited as supporting by analogy the reasoning of the court in the New Hampshire case. In the Muir case the court held that a laundry was not a manufacturing plant, for, although machinery of various kinds and manual labor were employed in the conduct of the business, still, as by its use the laundry merely transformed soiled linen into clean linen, it could not properly be termed a manufacturing plant, for nothing new was produced. We think this latter opinion was entirely correct and rested upon a sound basis, for the linen that came out of the laundry was the same linen that went into it. The dirt merely had been removed therefrom. It had not been manufactured there—merely cleaned.

In the case of Lawrence vs. Allen, 7 U. S. (How.) 785, it was held that the extracting of the sap, of the India Rubber tree, in its liquid or milky state does not constitute manufacturing, and those engaged in extracting this sap or milk of the rubber plant cannot properly be said to be manufacturers. True, the court held that the act of gathering the juice or sap of the rubber plant could not be termed manufacturing, nor could those who were engaged in this business be said to be manufacturers. But the court held that when this juice was boiled down and changed into any other form, it would be a manufactured article, and those engaged in this business manufacturers. This opinion rather supports the contention of counsel for appellant, for, although the rubber is changed in form, it is still rubber. The one in a liquid state and the other boiled down and subjected, perhaps, to some chemical process, by being mixed with other elements, is converted into some useful article of commerce. Those engaged in this business are clearly manufacturers. Other cases cited by counsel for appellee upon this question are not directly in point, and the reasoning for the rule upon which the opinion of the

court in the New Hampshire case is rested is not satisfactory.

Counsel for appellant, conceding that occasional isolated cases may be found which seem to support the contention of appellee, insists that the decided weight of authority is in support of its claim, that a company engaged in the production of electricity is in fact a manufacturing company within the usual and generally accepted meaning of the term. As supporting this view he cites the cases of People v. Wemple, 129 N. Y. 543, State v. American Sugar Refining Co., 108 La. 603, Commonwealth of Pennsylvania v. Northern Electric Light & Power Co., 145 Pa. St. 105, Southern Electric Light Co. v. Philadelphia, 191 Pa. 170, Commonwealth v. Keystone Electric Light Co., 193, Pa. 245, Beggs v. Edison Electric Light Co., 96 Ala. 295, and Lamborn v. Bell, 18 Colo. 346, where the question whether or not an electric light company was a manufacturing plant was directly involved, and in each case the court held it to be such. The further cases of opinion of the Justices, 150 Mass. 592, Edison United Manufacturing Co. v. Farmington Electric Co., 82 Me. 464, Covington Gaslight Co. v. City, 84 Ky. 94, and Newport Light Co. v. City of Newport, 20 S. W. 424, are cited as showing that, while the question at point was not involved, from the manner in which the court in those opinions spoke of and referred to electric light companies and gas companies, they were clearly regarded as manufacturing plants. We think the contention of appellant upon this point is sound. This court has twice held that a company engaged in the manufacture of artificial gas was a manufacturing concern. It is possible that some distinction may be drawn between the making of artificial gas from coal by means of machinery, and the conversion of the heat units or latent electricity in coal and water into electricity, whereby the one may be termed manufactured and the other not. But we are unable to draw so fine a distinction. Gas is known to exist in nature, presumably produced from coal by some great heat and high pressure to which it was subjected in ages past, since which time it has been confined in pockets in the earth. Electricity is known to exist in nature. The manufactured gas is identical with the natural gas, save perhaps that some of the impurities are removed. Manufactured electricity is in many respects similar to electricity as it exists in nature everywhere, but particu-

larly as it is known to exist in the atmosphere. The processes by which artificial gas and electricity are produced are in many respects similar. The heat energy in the coal is turned into electricity, and, by means, of wire, forwarded from the plant where generated to the consumer. Artificial gas is extracted from the coal, and through means of pipe or tubing, is transmitted from the factory to the consumer. Both are used for the purposes of supplying light, heat and power. They are sold by quantity and measured by meter. Hence, the fact that courts generally have held that a plant engaged in the production of artificial gas is a manufacturing plant is persuasive that a similar plant, engaged in the production of electricity, is likewise a manufacturing plant. But little is known of electricity. According to the definition of earlier lexicographers, it is an "exceedingly subtle agency that pervades all space." A consideration of the definitions given it by the more recent lexicographers leaves the mind in the same nebulous condition as to what it really is. It is seen through the results accomplished by it, and although it has come to fill one of the greatest needs in the economies of modern life, it remains as much a mystery as ever. We know it exists in nature, and that an agency similar to nature electricity can be produced through mechanical motion by heat. The heat in fuel, of whatever kind, may be used to convert water into steam or gas, and the power of this steam or gas is used to drive engines, which turn dynamos, and they produce the electricity which in the power plant may be stored for use at will. The larger the plant, i. e., the dynamos, and the greater the amount of fuel used, the greater the amount of electricity produced. In other words, the amount of electricity produced is dependent entirely upon the mechanical power of the engines. The heat units in the fuel are transformed into power, light or heat units in the shape of electricity. It is merely the changing of energy from one form to another, but these units of energy, after they have been so transformed, are so changed, that we think that may properly be termed "manufactured." They could certainly not be recognized; and when their form is so changed that they can no longer be recognized, to the average mind they are manufactured into a new product.

In the case of People v. Wemple, 129 N. Y. 543, where the court had under consideration the question here in-

volved, i. e., the right of an electric light company to exemption from taxation, the same conclusion was reached. The New York statute is the same as ours, and presumably the ordinance conformed to the requirements of that statute as fully as the ordinance in question does to the Kentucky statute. In an elaborate opinion there the court held that the company was entitled to the exemption, that is, that it was a manufacturing plant as the word "manufacture" is commonly understood. In that opinion the court most effectually disposed of the reasoning upon which the New Hampshire court rested its opinion, and, instead of giving to the word "manufacture," as used in the statute and ordinance, its technical or scientific meaning, adopted rather the meaning which the members of the Legislature, coming from the various walks in life, evidently had in mind when the word was used, and held that, as the business in which the company engaged rendered it necessary to invest a large amount of the capital in the plant in which to carry on its business, and then purchase a large amount of coal, which was consumed in the production of steam, whereby power was furnished for the operation of the expensive machinery which it was compelled to install, and the use of many hands to run the plant, it was such a business as the law-makers had in mind when, as an inducement to secure its location there, it authorized the city to exempt it from taxes for a designated period. The purpose of this exemption is to bring business to the city, to build up the city, and to bring people and operatives there. It is immaterial to the city whether the business is that of producing electricity or gas, cigars or plows. The end of the legislation is fully met and satisfied when a business of this character locates there. We are of opinion that the plant of appellant is a manufacturing plant. In fact, while counsel for appellee cites some authority supporting the contention that it is not, the point is not seriously pressed.

But counsel for appellee relies chiefly upon the ground upon which the chancellor rested his opinion, that, while it is a manufacturing plant, it is not that character of a manufacturing plant which, under the statute, is entitled to the exemption. In other words, being a public service corporation and having procured from the city a franchise to do business in the city—the right to run its wires and poles over the streets of the

city, in order that it might supply the people of Louis-
ville with electricity—it necessarily must have located
its plant there, and therefore it was not induced to locate
in the city of Louisville by reason of this statute, ex-
empting new manufacturing concerns from a tax for five
years.

Neither the Constitution nor the statute nor the ordi-
nance provides that the manufacturing plant must locate
there because of the inducement. The city offers the in-
ducement, and if a manufacturing concern locates there
and complies with the requirements of the ordinance as
to notice, etc., it is, as a matter of law, entitled to the
exemption. The question as to whether or not it was
actuated in locating there by reason of the passage of
the ordinance does not enter into the consideration at
all. The ordinance is for the benefit of any manufac-
turing concern that may locate there and conform to its
requirements. While the proof in this case shows that
this company did locate its factory within the city lim-
its, because it believed that it would be granted the
benefit of this ordinance, still, in the absence of such
proof we would hold that, when it is etstablished that
it is a new manufacturing concern and that it has located
in the city of Louisville since the passage of the ordi-
nance, and has complied with the requirements of the
ordinance as to notice, etc., it is entitled as a matter of
law to the benefits of the provisions of that ordinance.
Under the Constitution all laws must be general in their
application. Section one of the ordinance in question
provides that any manufacturing establishment which
shall have been permanently located and conducted
within the limits of the city of Louisville, shall be ex-
empt from taxation for a period of five years. The
invitation extended by the city was to all or any manu-
facturing concerns that would locate within its limits
and conform to the requirements of the ordinance. With
the character of business done by the company the city
was not concerned. Its sole object was to induce busi-
ness enterprises to locate there, and it therefore held
out the broad invitation to all, and, under that invita-
tion, any who responded to the call are entitled to the
benefits of the ordinance. True, the ordinance was
passed for the purpose of inducing manufacturing con-
cerns to locate there, but when such concerns have
located there the reason for their having done so is not
open to inquiry. Whether the benefits which would

accrue to them by reason of this ordinance induced them to locate there or not is wholly immaterial, the only inquiry, where this question is raised, being, is a manufacturing concern new to the city of Louisville, has it located there since the passage of the ordinance, and has it complied with the provisions of the ordinance as to notice, etc. If these questions are answered in the affirmative, it is entitled to the exemption.

We are aware that the Supreme Court of Maryland, in the case of Frederick Electric Light & Power Co. v. Frederick City, 84 Md. 599, expressed a contrary view when considering a question in many respects similar to that before us, but we are unwilling to follow the rule announced in that opinion, for in order to do so we would have to read into the ordinance the words "except public service corporations" following the word "establishment." This we are neither willing nor authorized to do, as the ordinance is plain, unambiguous and certain. Had the General Council desired to limit the ordinance in its operation and effect to all manufacturing concerns other than those operated for the benefit of public service corporations, it could easily have done so. The very fact that it did not is persuasive that it was intended that the provisions of the ordinance should apply to all manufacturing concerns alike, without regard to the character of business in which they were engaged.

This conclusion disposes effectually of the contention that, because appellant is a public service corporation, it is not entitled to the exemption. Neither the Constitution, the statute, nor the ordinance passed for the purpose of carrying it into effect, warrant such a distinction. As a manufacturing plant it generates electricity. As a public service corporation it sells the product of its factory to the public in the city of Louisville. Its product, the electricity, is delivered to its patrons through wires, either run beneath the ground in conduits or above the ground on poles. It is not necessary or essential to the conduct of its business that its factory be located within the city. It could locate just outside the city limits, or across the river even, in Jeffersonville or New Albany, and transmit the electricity over its wires to the city of Louisville. It could still be a public service corporation in the city of Louisville and manufacture its product at another point.

This view of the question very much simplifies the

third and last point raised, to-wit, what portion of appellant's property is exempt from taxation? Clearly, the ground upon which the manufacturing plant is located, the building erected thereon, and the machinery and appliances used therein in generating or manufacturing the electricity. Its poles, conduits, lines, wires, etc., are not used in any way whatever in the manufacture of the electricity, but their use is to dispose of the manufactured product, just as the horses and wagons and drays of a box factory might be used in removing the boxes when manufactured from the factory to the warehouse or purchasers. While they may be necessary to make the business a success, still they are not necessary to manufacture the product, and the ordinance is silent upon the question of the sale or disposition of the manufactured product. It offers no inducement in the way of exempting from taxation property used in disposing of the output of the factory. We, therefore, hold that appellant is conducting a manufacturing business in the city of Louisville, that it is a new business, located there since the passage of the ordinance, and that, having complied with the terms of the ordinance as to notice, etc., it is entitled to the benefit of the five years exemption from taxation on its manufacturing plant. It it not entitled to exemption on any of the property by it in distributing, selling and disposing of its manufactured produce, hence its poles, wires, conduits, and other property outside of its factory proper are subject to taxation for the years in question.

Judgment reversed and cause remanded for further proceedings consistent herewith.