## City Of Louisville ex rel. v. Howard et al.

June 17, 1947.

Rehearing denied March 12, 1948.

W. B. Ardery, Judge.

688

Lawrence S. Poston and Gilbert Burnett for appellant.

Eldon S. Dummit, Attorney General, Roy W. House, Assistant Attorney General, Charles W. Milner and B. Hudson Milner for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

City of Louisville, now the appellant, filed in Franklin Circuit Court a petition against members of the Kentucky Tax Commission, now appellees, seeking a mandatory order to require the commission to make, upon property owned by Louisville Gas and Electric Company during the period ending December 31, 1942, a valid tax assessment in lieu of one previously made but alleged by the city to be invalid.

Louisville Gas and Electric Company, also an appellee, was made a party defendant in order to afford to it an opportunity to justify the assessment already made. And the main defense of this litigation has really been conducted by the company, although this was done in the name of the appellees, public officials.

The general demurrers of appellees to the petition of appellant having been sustained, the latter now prosecutes this appeal seeking reversal of the judgment against the city.

The question in issue is whether or not the city stated a legal cause of action in its petition, and a determination of this question depends upon whether the tax commission made upon this company's property a legal rather than an illegal tax assessment based upon the company's annual report as of December 31, 1942.

The city, in the process of making out its case by this pleading in controversy, filed with its petition, and as part of same, the entire record accumulated before the tax commission upon the occasion of the commission's hearing of the city's protest against the assessment in question. In this manner, all the facts, figures, exhibits and evidence heard before the tax commission have been wheelbarrowed into this court upon our present consideration of this specific question as to the legal sufficiency of the city's petition to state a cause of action.

The city's petition alleged, in main substance, that the 1942 assessment is invalid (1) because the commission pursued an erroneous method in fixing this company's franchise value and (2) because the commission erroneously exempted from city taxation this company's machinery foundations, along with the machinery itself, and (3) because the commission erroneously exempted from city taxation this company's substation equipment and switching equipment, as if these were items of machinery used in manufacturing.

### Alleged Errors in Valuing Franchise

The city alleged that the commission erred in its method of fixing a value on this company's franchise. More specifically, the petition said, in substance, that the commission, after permitting deductions for all federal taxes, including income and excess profits taxes, and after permitting deductions for depreciation on the basis of figures previously accepted by the federal government, had taken the company's 1942 net income, viz., $3,426,709, and after having considered such net income as the equivalent of a 6% net return on invested capital, had then multiplied such net income by 16 2/3 in order to arrive at a value of the company's capital stock on a 100% basis. The city further alleged that the commission had then taken this determined value of the company's capital stock and had equalized it, that

is to say had reduced it by such percentage as to make it equal to similar property values of other taxpayers, and that the commission had then deducted the assessed value, that is the unequalized value, of the company's tangible property, thus producing the resulting difference as the company's franchise value.

The proper method to be used by the state's taxing authorities in ascertaining the value of a franchise of a public service corporation is (A) to determine the value of the corporation's capital stock and (B) to deduct the assessed value of the corporation's tangible property from such determined capital stock value and (C) to designate the remainder or difference as the corporation's franchise value. KRS 136.160.

The very first requirement necessitates a determination of the value of ·a corporation's capital stock. This is ascertained from data delivered to the taxing authorities through reports required to be filed by corporations under the provisions of KRS 136.130 and KRS 136.140. From these reports, the taxing authorities pick out the corporate net income, which is universally regarded as the amount left in pocket after deducting all expenses. And expenses are universally regarded as including all taxes, big, little, hateful, obnoxious and worrisome. Expenses are also universally regarded as including depreciation, that disappearing wearout element of all property, on the basis of the rate of speed at which such property disappears or wears out. Thus, the corporate net income comes forth. Let us suppose that such net income is in the amount of $6. Now, reason out the taxing authorities, a piece of property, producing an average yearly income of $6 over a period of time, ought to be worth $100, since $100 hired out at legal rate of interest would produce exactly $6 per year. Therefore, taxing authorities usually capitalize, as the city alleged was done in the instant case, a corporation's net income on 6% basis in order to arrive at the corporation's capital stock value on 100% basis.

The legality of arriving at corporate capital stock valuation by the method set out above, which was the one followed by the commission in the instant case, has been recognized by this court in several cases. One of the

very early cases recognizing the validity of this method of capital stock valuation is the case of Hager, etc., v. American Surety Co., 121 Ky. 791, 90 S. W. 550.

Although the city alleged that the commission had, in permitting deduction of the above mentioned taxes and the depreciation allowances, which had been accepted by the federal government, erred in thus arriving at this company's net income, and although the city further alleged that the commission had also erred in capitalizing such net income on 6% basis, instead of 4% basis, in these times of cheap money, yet we do not believe that these particular allegations, relating to taxes, depreciation and the percentage used in the capitalization process, made out either a legal cause of action or any showing whatever of an erroneous method pursued by the commission. The taxes had to be paid. The depreciation was allowed on a recognized basis. The capitalization percentage was one of standardized acceptation. Therefore, the commission committed no error in its method of arriving at this company's capital stock value, and accordingly the city's petition stated no cause of action in this particular respect.

However, the city's petition further alleged that after the commission had determined the amount of this company's capital stock value, the commission had then equalized it, had thereafter deducted from such equalized capital stock value the assessed value of the company's tangible property in order to produce the difference as the company's franchise value. If this latter method was followed, as the city's petition alleges it was, then the commission did, we believe, pursue an erroneous method. Consequently, the appellant did, we think, state a legal cause of action in this latter respect. The law, KRS 136.160, says that the taxing authorities shall do two things in order to arrive at a tax value for a franchise. First, it says that they must fix, with no detailed method prescribed, a capital stock value, with no defined meaning attached. Second, it says that they must then deduct from such predetermined capital stock value the assessed value, with no clear indication as to whether the assessed value means one equalized or unequalized, of all tangible property. These two operations produce a remainder, which is, according to

KRS 136.160, the franchise value. But it is necessary, we believe, to keep in mind that the very bull's eye of this target is the franchise value itself, which is the specific thing to be shot at by all taxing and equalizing authorities. Before any equalizing takes place, the ultimate object to be equalized must itself be produced. Separate equalization of the component parts of the object to be equalized would appear to be erroneous and improper. In the instance of an automobile, the object to be equalized by taxing authorities would necessarily be the complete vehicle rather than its radiator and then its motor and then its wheels. Tax equalization is a subsequent process rather than a preliminary process. It works on the consolidated thing to be taxed, not on the parts of the thing to be taxed. The subject for taxation in the instant case was the franchise value, not its parts. Any equalization by the commission of any of the component parts of the franchise value was erroneous. The city's petition stated a legal cause of action to the extent that it stated that the commission erred in equalizing the component parts of this company's franchise value instead of equalizing the franchise value itself after such value had come into its own entity. The correctness of this judicial viewpoint appears to be substantiated in the case of Kentucky Heating Co. v. City of Louisville, 174 Ky. 142, 192 S. W. 4, and also in the case of Cumberland Pipe Line Co. v. Lewis, D. C., 17 F. 2d 167.

## Alleged Errors in Exempting Foundations

The city's petition further alleged, in substance, that the commission's 1942 assessment for this company's property exempted from the burden of city taxes certain items of machinery foundations; that such exemption was based upon the theory, promulgated by the company and adopted by the commission, to the effect that such mentioned items of property, representing total investments by the company of $4,329,757.57, should be considered integral parts of machinery and therefore free from the burden of city taxes under the provisions of KRS 132.200; that such items consisted of concrete pilings beneath buildings, of the footings and foundation walls of buildings, of the concrete floors of buildings, of one building in its entirety, of another building

to the extent of 85% of its entirety, of certain concrete beams and certain structural steel in buildings, of a railroad trestle and sidings costing $215,609, of concrete caissons, of concrete basement walls of one building, of all the concrete substructure, costing $2,016,238, of one building, of still other property items and investments described in the city's petition.

It is our belief that the legislative purpose and intent behind the provisions of KRS 132.200 relating to the exemption of machinery from local taxation paralleled the people's desire to encourage manufacturing in this state. However, we cannot believe and do not believe that it was ever the legislative purpose to extend tax exemption of machinery beyond the machinery itself and the actual bases of such machinery. We cannot believe that it was the legislative intent to extend such an exemption over into the very walls and floors and foundations of buildings or over into plant appurtenances such as railroad trestles and sidings. It is our opinion that it would be a natural interpretation of this tax exemption law for us to say that this exemption of machinery from local taxation may include only the actual machinery base, made for that particular purpose and none other. It is our conception that the exempted bases would be, under this interpretation, similar in character and purpose and outreach to the legs of a table. But it is well to remember that the legs of a table do not spread out across the floor or up the walls or over the roof or outside the house so as to include a railroad siding at the back door. If we could take a giant's biscuit cutter and cut out and around machinery units, right down to the underlying floors, we would necessarily include the supporting and natural pedestals of all such machines, yet we would not include structural foundations nor walls nor buildings nor railroad sidings. It is entirely too easy to encroach upon the legislative grace of a tax exemption statute. But it should be remembered that if there is any doubt as to whether or not a controversial item of property is exempted from the burden of taxation, then such doubt must be resolved in favor of taxability. Vogt v. City of Louisville, 173 Ky. 119, 190 S. W. 695, Ann. Cas. 1918E, 1040.

In view of the allegations, above set out in a general

way, of the city's petition relating to the commission's act of having exempted, to the extent indicated, the so-called machinery foundations of this company from city taxes, we believe that a legal cause of action was stated in such petition in regard to the particular subject. And it is our opinion that the company's machinery bases cannot be legally exempted from local taxes beyond those limitations we have attempted to specify and define herein.

### Alleged Errors in Exempting Substations.

The city's petition still further alleged, in substance, that the commission's 1942 assessment for this company's property exempted from the burden of city taxes certain items of substation equipment; that such exemption was based upon the theory, promulgated by the company and adopted by the commission, to the effect that such mentioned items of property, representing total investments by the company of $5,199,837.96, should be considered manufacturing machinery and therefore free from the burden of city taxes under the provisions of KRS 132.200; that such items consisted mainly of transformers which were used to change the pressure of electrical energy prior to its consumption by the public.

If this company's transformers were not items of machinery used in manufacturing, then they were legally subject to city taxes and the allegations of the city's petition stated a legal cause of action in this respect. But if, on the other hand, such transformers were in fact items of machinery used in manufacturing, then they were not legally subject to city taxes and the allegations of the city's petition failed to state a legal cause of action in this respect.

The question presented is that of whether or not these transformers were items of machinery used in manufacturing.

The definition of machinery itself is broad enough to cover anything from a peanut roasting outfit on Main Street to a blast furnace in Pittsburgh. But the commonly accepted legal view on what constitutes manufacturing is not quite so broad.

The generation of electricity is manufacturing.

Kentucky Electric Co. v. Buechel, 146 Ky. 660, 143 S. W. 58, 38 L. R. A., N. S., 907, Ann. Cas. 1913C, 714.

The roasting, processing and packing of coffee constitutes a manufacturing activity. City of Louisville v. J. Zinmeister & Sons, 188 Ky. 570, 222 S. W. 958, 10 A. L. R. 1269.

The operation of a rock quarry has been held to be manufacturing. Commonwealth, for Use of Rockcastle County, v. W. J. Sparks Co., 222 Ky. 606, 1 S. W. 2d 1050.

The bottling of whiskey has been held to be manufacturing. Burke, Tax Com'r, et al. v. Stitzel-Weller Distillery, 284 Ky. 676, 145 S. W. 2d 861.

The filtration of water is not manufacturing. Prestonsburg Water Co. v. Prestonsburgs Board of Supervisors, 279 Ky. 551, 131 S. W. 2d 451.

The pasteurization of milk is not manufacturing. City of Louisville et al. v. Ewing Von-Allmen Dairy Co., 268 Ky. 652, 105 S. W. 2d 801.

Now it seems that the best viewpoint which we might presently adopt on this subject of what constitutes manufacturing is this one, viz., that if a process takes something practically unsuitable for any common use and changes it so as to adapt it to such common use, then such a process may be legally considered as manufacturing within the meaning of the tax exemption statutes.

The (a) making of electricity, the (b) roasting, processing and packing of coffee, the (c) quarrying of rock, the (d) bottling of whiskey—all these were processes of taking things unsuitable for practical, common, civilized use and of changing those things so as to adapt them to such practical, common, civilized use. Commonly speaking, raw coffee in the bean, native rock in the hill, unmeasured whiskey in the vat—none of these articles is practically suitable for common use until processed. On the other hand, (a) unfiltered water is practically suitable for a common use, e. g., washing the baby's clothes, and (b) unpasteurized milk is practically suitable for a common use, e. g., members of this court were raised on it.

Applying the yardstick of our definition set out above to the raw, unmeasured volume of electrical energy as it comes out of the generating plant, we must regard it as a thing which is practically unsuitable for a common use. Electrical companies do not invest millions of dollars in substations or transformers in the pursuit of a hobby. They make such investments because they are necessary to change generated electricity from a sort of an uncivilized force, unfit to enter a home or place of business, into a subdued servant which may, through "transformer training," become practically suitable for a common use.

We believe that this company's large substations and transformers take an electrical energy, which is practically unsuitable for common use, and change it into a thing of usefulness to mankind. Therefore, we believe that these particular property items constitute machinery used in manufacturing within the meaning of the tax exemption statutes. And it follows that we further believe that the allegations of the city's petition did not state a legal cause of action in relation to this specific subject.

In the light of all of our views set out above, it is apparent that the judgment must be reversed because the trial court fully sustained the appellees' general demurrer to appellant's petition. The general demurer should have been overruled as to the city's cause of action set out in regard to the commission's error in reaching a value as to the company's franchise; such demurrers should have been overruled as to the city's cause of action set out in regard to the commission's error in exempting the company's machinery foundations so as to include more than mere machinery pedestals; such demurrer should have been sustained, as it was, as to the city's allegations set out in regard to the commission's asserted error in exempting the company's substations from city taxes.

Wherefore, the judgment of the trial court is now hereby reversed for the reasons herein indicated and for further proceedings consistent herewith.