127 So.2d 603

**STATE of Alabama**

v.

**TELEVISION CORPORATION.**

6 Div. 328.

Supreme Court of Alabama.

March 2, 1961.

John Patterson, Atty. Gen., and Willard W. Livingston, Asst. Atty. Gen., for appellant.

Deramus, Fitts & Johnston and Jas. C. Barton, Birmingham, for appellee.

COLEMAN, Justice.

This is an appeal by the state from a decree in equity setting aside a use tax assessment and holding that certain machines are exempt from use tax under § 789(p), Title 51, Code 1940, as amended.

As amended by Act No. 210, approved July 12, 1949, Acts of 1949, page 300, the statute recites in pertinent part as follows:

"* * * 'The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article: * * *. (p) Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term "machines," as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used. * * *.' "

The statute exempts from use tax machines "* * * used for * * * processing or manufacturing tangible personal property * * *." The taxpayer contends and the trial court held that the instant machines are used in "compounding, proc-

essing, or manufacturing tangible personal property" and, therefore, under the statute, are exempt from use tax. The state contends that the machines are not so exempt.

The machines involved are two television power amplifiers and two aural or sound power amplifiers used by the taxpayer in television broadcasting.

As stated in appellant's brief, all the evidence is of a technical nature. Appellant concedes: "* * * There is no conflict in the evidence * * *," and that: "The sole question is whether these amplifiers are machines used in compounding, processing and manufacturing of tangible personal property within the meaning of section 789(p), supra. It was stipulated (Tr. p. 78) that each amplifier is an indivisible package, either wholly subject to or wholly exempt from the Alabama use tax."

Without undertaking a technical discussion of the amplifiers, we note that each of them contains transformers and vacuum tubes. One expert witness defined a power amplifier as a device which provides at its out-power terminals a greater power than is supplied at its input terminals, thereby there is an increase in the power or there is power amplification, and amplification is customarily used in all installations for transmission of radio and television signals.

It is stipulated that each of the amplifiers in this case operates in the same manner and serves the same function as the power amplifier described in the testimony of Professor H. E. O'Kelley who testified as an expert witness. He described television transmission, vacuum tube operation, and amplifier operation in detail. Among other things, the statement prepared by Professor O'Kelley states:

"Fundamentally, the action of the power amplifier in Fig. 4 and those in Fig. 1 is: (1) alternating current from the power company is converted to direct current in the power supply, and (2) the triode vacuum tube when acted

upon by an alternating current at the grid, converts part of the direct current from the power supply in to an alternating current. The alternating current at the output is much greater than that obtained from the amplifier to the left. Power supply No. 2 in Fig. 4 serves to properly adjust the operating characteristics of the triode. Alternating current from the power company has a frequency of 60 cycles per second whereas the alternating current at the output of the power amplifier has a frequency of several million cycles per second. * * *"

At another point he testified:

"Q. Professor, are you familiar with the type of transformers that the Power Company uses in their transmission of electrical energy? A. Yes, sir.

"Q. Is there any basic difference between those transformers generally used by them and the transformers that we have here shown on this diagram in Exhibit A? Is there any basic difference in them? A. No.

"Q. Will you point out on Appellant's Exhibit A some of the ten or eleven transformers that make up these package units or amplifiers? A. At the top—at the top of the figure Items which are marked T1K, T2K, T3K, and T4K are transformers.

"Q. And their purpose and use in this amplifier is basically the same purpose and use that they are put to, and operate the same as the transformers used by the Power Company and other electrical power producers, is that correct? A. Yes, sir."

█ It is settled that electricity is tangible personal property within the meaning of that term in § 789, Title 51, Code 1940. Curry v. Alabama Power Company, 243 Ala. 53, 8 So.2d 521. In that case we held also that transformers are machines used in processing electricity. State v. Alabama Gas Corporation, 258 Ala. 356, 62 So.2d 454.

█ We are of opinion that the power amplifiers here involved are also machines used in processing electricity, and, therefore, are machines used in processing tangible personal property and exempt from use tax under § 789(p), Title 51, Code 1940.

█ We note that § 789, Title 51, Code 1940, has been amended since the decision in the Curry case in 1948. Act No. 210, 1949 Acts, supra. Subdivision (p), formerly (q), was re-enacted without change. Unless a contrary intent appears, the re-enactment of a statute which has been judicially construed is an adoption of the construction. United States Steel Corp. v. Goodwin, 267 Ala. 612, 104 So.2d 333.

We do not understand that the state seriously controverts the finding that the amplifiers are machines used to process tangible personal property. The state's brief recites: "* * * the writer of this brief * * * is thoroughly familiar with * * * the cases of Curry v. Alabama Power Company, 243 Ala. 53, 8 So.2d 521; State v. Calumet & Hecla Consolidated Copper Company, 259 Ala. 225, 66 So.2d 726; Southern Natural Gas Company v. State, 261 Ala. 222, 73 So.2d 731; and State v. Alabama Gas Corporation, 258 Ala. 356, 62 So.2d 454, the decisions upon which the appellee's case is based, and it must be stated that these cases are pretty good authority for appellee's position. * * *" The brief further states that appellant desires "* * * an opinion out of this Court as to whether the principles of law announced in these cases, particularly the Alabama Power Company case, are applicable

to the type of equipment involved in the case at bar. It appears that the machinery exemption statutes, both in the sales and use tax laws, have been extended to a mighty thin line in the decisions referred to above as well as in the recent case of State v.

Newbury Mfg. Co., 265 Ala. 600, 93 So.2d 400, and if the principle in the Alabama Power Company case is applicable to the case at bar, it is respectfully submitted that this line will be further extended."

It appears to us that the state's serious contention on this appeal is based on the proposition that the exemption in § 789(p) does not apply to a machine unless it is used in manufacturing or processing tangible personal property "for sale."

That proposition has been twice considered by this court and twice held not to be the law. In State v. Calumet & Hecla Consolidated Copper Company, 259 Ala. 225, 66 So.2d 726, 729, this court held that the exemption applied to machines used to manufacture products which were not sold but were used as machines to manufacture products which were sold. In the Calumet case, the state contended that the words "for sale" should be read into the exemption statute. This court said: "* * * the appellant is asking the courts to supply words not found in the statute * * *," and held the machines exempt.

In Southern Natural Gas Company v. State, 261 Ala. 222, 73 So.2d 731, this court held that the exemption applied to machines used as stand-by generators to supply electricity to compressors which themselves were not exempt. The proposition relied on by the state in the instant case was fully considered and was again rejected by a divided court. The majority said:

"* * * The effect of the Calumet case is that, in order for a machine used in manufacturing tangible personal property to be exempt, it is not required that such property itself be manufactured for sale or that it be used in compounding, processing or manufacturing tangible personal property either for use by the owner or for sale.

So long as a machine is used for manufacturing tangible personal property, it is granted exemption by the statute, Code 1940, Tit. 51, Sect. 789(p), as amended regardless of the use made of the property manufactured. * * *" 261 Ala. 222, 229, 230, 73 So.2d 731, 738.

In State v. Reynolds Metals Company, 263 Ala. 657, 83 So.2d 709, this court held that the exemption applied to steel balls used in processing material which was reclaimed and re-used in the manufacture of aluminum. This court said:

"* * * But under the provisions of the statute the exemption not only applies when the machine is used to manufacture or compound tangible personal property but also to *process* it. * * * The exemption applies to machines which process tangible personal property regardless of the use or disposition to be made of it when processed. [Citations omitted.]" 263 Ala. 657, 662, 83 So.2d 709, 713.

■ In the light of our former decisions, we cannot now construe the statute as requiring that the property be processed for sale in order for the processing machine to be exempt. "* * * That is a matter of policy which rests exclusively with the legislature." Southern Natural Gas Company v. State, supra.

The decree appealed from is in accord with the views above set out and is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.