COMMONWEALTH of Kentucky ex rel. J. E. LUCKETT, Commissioner of Revenue, Appellant,

v.

WLEX–TV, INC., a Kentucky Corporation, et al., Appellees.

Court of Appeals of Kentucky.

Nov. 1, 1968.

As Modified on Denial of Rehearing March 7, 1969.

Paul Shapiro, Department of Revenue, Frankfort, William S. Riley, Asst. Atty. Gen., Dept. of Revenue, Frankfort, for appellant.

Charles Calk, Gess, Mattingly, Saunier & Atchison, Lexington, for appellee.

Edgar A. Zingman, James N. Williams, Jr., Wyatt, Grafton & Sloss, Louisville, for amicus curiae, Kentucky Broadcasters Ass'n, Inc.

EDWARD P. HILL, Judge.

This appeal involves the validity of an assessment against WLEX-TV, Inc., for use taxes under KRS 139.310 on certain purchases of property made out of this state to be used in its television operations at Lexington, Kentucky. The assessment was appealed to the Kentucky Board of Tax Appeals. The board upheld the assessment. Appeal was taken to the circuit court, where judgment was entered reversing the action of the board and holding that the property attempted to be assessed was "exempt under KRS 139.480(8) Machinery for new and expanded industry." We reverse the judgment appealed from.

The tax sought to be avoided is imposed by KRS 139.310, which we quote:

"An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased on or after July 1, 1960, for storage, use, or other consumption in this state at the rate of three percent of the sale price of the property."

Appellee WLEX-TV contends certain exemptions from the payment of this "use" tax provided by KRS 139.480(8) relieve it from the payment of taxes on the purchases involved. The statute lists, among kinds of property that are exempt when used for certain purposes, " * * * (8) Machinery for new and expanded industry."

By KRS 139.170 the legislature has defined "Machinery for new and expanded industry" to mean:

" * * * [T]hat machinery used directly in the manufacturing process, which is incorporated for the first time into plant facilities established in this state, and which does not replace machinery in such plants."

Is television broadcasting a "manufacturing process" within the meaning of KRS 139.170? That is our question, and our answer is in the negative.

The specific question here presented has not been decided in this jurisdiction, although appellees contend that this court in Kentucky Electric Co. v. Buechel, 146 Ky. 660, 143 S.W. 58 (1912), took a long and irrevocable step in this direction when it decided that a coal-burning, electric generating plant was engaged in "manufacturing." We find Kentucky Electric Co. v. Buechel, supra, to be of little assistance in the present case. In *Buechel* there was involved the use of coal, water, and heat to produce an entirely new, though invisible, product—electricity.

Perhaps we should go in reverse here and examine such definitions of "manu-

facturing" as have been given by this court in past decisions. In City of Louisville ex rel. v. Howard, 306 Ky. 687, 208 S.W.2d 522, this court defined "manufacturing" as the taking of "something practically unsuitable for any common use and changes it so as to adapt it to such common use."

After a good many attempts by this court to define the word "manufacturing" or manufacturing process [1] and realizing the difficulty in doing so, we finally got around to the "common understanding of mankind" definition contained in City of Lexington v. Lexington Leader Co., 193 Ky. 107, 235 S.W. 31, from which we quote at page 32:

"Usually that meaning will be attached to them which corresponds with 'the common understanding of mankind,' in view of the subject matter in connection with which they are used. In other words, that interpretation is to be adopted which agrees with the popular sense in which they are used and understood, rather than according to their scientific meaning; and this is especially so in the construction of tax laws including exemptions therefrom."

In common parlance, television broadcasting involves the use of electricity, light, and sound to produce and transmit image and sound for those having a receiving set and desiring to "tune in" and receive the program. Generally television broadcasting relies upon commercial advertising to pay the bill for its program and productions. Its programs are sent out over allotted channels free of charge to any would-be receiver.

 One of the important circumstances in construing the word "manufacturing" as used in a tax-exemption statute is the apparent objective of the legislature in enacting it. And "it is not the number of processes or the various kinds of treatment

through which the alleged manufactured article is subjected that determines the question, but rather the character and kind of article that is produced, after being so subjected, is the decisive fact." City of Lexington v. Lexington Leader Co., 193 Ky. 107, 235 S.W. 31, 33, *supra*, in which it was held that the printing and publishing of a newspaper is not a manufacturing process. The opinion in the Lexington Leader case goes on to reiterate that the purpose of exempting manufacturing equipment from the ad valorem taxation statute was to encourage the location of manufacturing plants in this state. It seems to us that KRS 139.480(8) has the same purpose. It is true that in 1922, after the Lexington Leader case had been decided, the legislature amended the statute there in question and specifically defined "manufacturing" to include newspaper publishers and printing plants, but in so doing it did not, as the appellee company argues here, "overrule" the Lexington Leader opinion; it merely changed the statute, as it is at liberty to do in this instance. Fundamentally, the Lexington Leader case is still the law, and we think it applies to this case.

 The ultimate purpose of the exemption is to enhance the competitive position of this state as against other states in encouraging the location and expansion of the industries whose "manufacturing" processes require volume employment of people. At first blush it might seem that our opinions in Kentucky Electric Co. v. Buechel, 146 Ky. 660, 143 S.W. 58, and City of Louisville v. Howard, 306 Ky. 687, 208 S.W.2d 522, holding that the generation and transformation of electricity by a public service corporation constitutes manufacturing would not be sustainable under that theory. However, the amount of available electric power is a direct and vital inducement to industry. Moreover, electric power is a product that is measured out and sold directly to the customer to

1. For an interesting and instructive review of the earlier cases on the subject of what is "manufacturing," see In re

Rheinstrom & Sons Co., 207 F. 119 (E.D. Ky.1913).

whom it is delivered, in the same manner as other tangible goods. The end product of television is neither measurable nor is it, thus far, purchased by the persons to whom it is transmitted. If the process of converting electric impulses into a form that can be received by a television set constitutes manufacturing, then so does the process by which the television set converts them to a picture, in which event television sets also are exempt from the tax because they are machinery used in a manufacturing process. In the last analysis, the function of television is to transmit a message or communication. It manufactures messages in about the same sense that a common carrier manufactures travel. We do not believe it is "the character and kind" of manufactured product envisioned by the statutes in question.

We are not unmindful of the opinion in State v. Television Corporation, 271 Ala. 692, 127 So.2d 603 (1961). We are not persuaded to the same viewpoint.

Appellees cite and rely upon W.A.V.E., Inc. v. City of Louisville, Ky., 248 S.W. 2d 701 (1952), as holding by "clear import" that items of machinery and equipment used in the process of assembling electro-magnetic waves "would be" exempt. It should be noted, however, that in *W.A.V.E.*, supra, a television tower was the subject of the litigation. This court decided that the tower was not exempt. We cannot agree that *W.A.V.E.* can be interpreted as conveying such an "import" as suggested by appellees.

It is concluded that the property assessed is not exempt from taxation.

The judgment is reversed for proceedings consistent herewith.

MONTGOMERY, C. J., and MILLIKEN, STEINFELD, PALMORE, and WILLIAMS, JJ., concur.

OSBORNE, J., dissents.

OSBORNE, Judge (dissenting)

The question presented to the court in this appeal is: "Is broadcasting a manufacturing or processing production operation" under the provisions of KRS 139.480(8)? The lower court found that it was. I agree.

As early as 1886 in Covington Gas Light Company v. City of Covington, 84 Ky. 94, 8 KLR 442, this court recognized that a gas company was a manufacturing company when it took raw gas and made it suitable for domestic use. We likewise held in Ky. Electric Co. v. Buechel, 146 Ky. 660, 143 S.W. 58, that the generation of electricity was manufacturing because it involved transforming heat into electric power. In City of Louisville ex rel. v. Howard, 306 Ky. 687, 208 S.W.2d 522, we held that transformers which did nothing more than raise or lower voltage and transform AC current to DC current were machinery used for manufacturing. In the course of that opinion, we said:

"Applying the yardstick of our definition set out above to the raw unmeasured volume of. electrical energy as it comes out of the generating plant, we must regard it as a thing which is practically unsuitable for common use. Electrical companies do not invest millions of dollars in substations or transformers in the pursuit of a hobby. They make such investments because *they are necessary to change generated electricity from a sort of uncivilized force, unfit to enter a home or place of business, into a subdued servant which may,* through 'transformer training' *become practically suitable for a common use."* (Emphasis added).

In the case before us on this appeal the broadcaster takes the raw material of light and sound at the location of the transmitter and by the injection of additional electrical current converts this light and sound into a radio wave which is transmitted to the user. It can not be argued with any degree of logic but what the broadcasting station manufactures radio waves which are placed upon the market for common use of all people within the range of the station. The Supreme Court of Alabama has previously

met the exact problem which faces us to-day. It had in previous cases held that machinery used in the generating of electricity was used in the manufacturing process. When it was faced with the problem of whether the creation of radio waves was a manufacturing process, it held that it was for the very sound reason that it had previously held the generation of electricity was manufacturing. See State v. Television Corporation, 271 Ala. 692, 127 So.2d 603. The golden thread running through our decisions on the subject seems to be whether or not an unusable raw material is converted into a usable, salable product. Since we have previously held that the creation of electricity is manufacturing and the transforming of electricity is manufacturing it seems inescapable to me but that the creation of radio waves for the purpose of transmission upon the market is nothing less than the process of manufacturing.

For the foregoing reasons, I respectfully dissent.