INDIANA DEPARTMENT OF STATE REVENUE, SALES TAX DIVISION *v.* CABLE BRAZIL, INC., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

[No. 2-1076A382. Filed September 7, 1978.]

*Theodore L. Sendak,* Attorney General of Indiana, *Alembert W. Brayton,* Deputy Attorney General, for appellant.

*Robert A. Garelick, Michael S. Maurer, Maurer, Garelick, Cohen & Frank,* of Indianapolis, for appellee.

### ON PETITION FOR REHEARING

BUCHANAN, C.J. — In a memorandum opinion handed down March 6, 1978, this court determined sua sponte that Indiana Department of State Revenue, Sales Tax Division (Department) had failed to timely file its Motion to Correct Errors. The record showed the judgment was entered March 29, 1976, but the Motion to Correct Errors was not filed until June 1, 1976, sixty-four (64) days after judgment.

On remand, the trial court corrected the record indicating that the

Motion to Correct Errors was filed on May 28, 1976, the sixtieth (60th) day after judgment. In light of the corrected record, we grant the Department's petition for rehearing and address the merits of the case.

## CASE SUMMARY

The Department appeals from the trial court's judgment that Cable Brazil, Inc. (Cable Brazil), and other similarly situated cable television systems in Indiana, may claim a refund under IND. CODE 6-2-1-39(b)(6) for sales tax paid on the purchase of equipment used in producing and transmitting cable television signals. The trial court found that a television signal is tangible personal property, and that the antenna, cables, amplifiers and other related equipment were used in the processing and refining of tangible personal property.

The Department challenges this judgment claiming a television signal is not tangible personal property and that the equipment involved is not used in the direct production, manufacture, processing and refining of the television signal.

We reverse.

## FACTS

The facts are undisputed:

This action was brought by Cable Brazil on behalf of itself and other cable television systems in the State, to recover sales tax paid on certain materials and equipment used to gather and transmit TV signals to cable television customers.

Cable Brazil relies on IND. CODE 6-2-1-39(b)(6):

(b)    Nor shall the state gross retail tax apply to any of the following transactions:

. . .

(6)    *Sales of* manufacturing machinery, tools and *equipment to be directly used* by the purchaser in the direct production, manufacture, fabrication, assembly, extraction, mining, *processing, refining or finishing of tangible personal property*; sales of agricultural machinery, tools and equipment to be directly used by the purchaser in the direct production, extraction, harvesting or processing of agricultural commodities; and sales of tangible personal pro-

perty to be directly used by the purchaser in the direct production or manufacture of any such manufacturing or agricultural machinery, tools and equipment. [emphasis added]

(the exemption statute herein)

Evidence presented to the trial court related to the nature and method of operation of a cable television system. After hearing the evidence, the trial court made the following pertinent findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The Plaintiff, Cable Brazil, Inc., is a corporation organized and existing under Indiana law, with its principal office located at 108 East Washington Street, Indianapolis, Indiana. The Plaintiff is engaged in the cable television business in Clay County, Indiana.

2. Cable television is a process, the end product of which is a refined and processed electronic signal viewed in a television set.

3. Cable television, as the Plaintiff operates, is substantially identical to all other cable television systems operating within the State of Indiana.

4. The cable television process begins at the tower where an electronic television signal is received by various antennae located on the tower, generally several hundred feet in the air. The signal is then transported from the antennae to devices generally referred to as head-end processors. After the electronic signal has passed through the head-end processor, it is distributed over coaxial cable held in place by strand to its ultimate destination, a customer's home television receiver. Approximately every 1500 to 2000 feet as the electronic signal travels along the coaxial cable, it passes through amplifiers. Finally, as the signal enters the home television receiver it passes through a transformer that has a material effect on the electronic television signal.

5. The electronic signal is materially changed through the process described in Findings of Fact No. 4. The frequency of the signal is changed, the ohms or impedence of the signal is changed, the signal is purified in that unwanted interference is removed and it is strengthened so that a signal that is not usable is converted into a marketable product.

6. The electronic television signal processed in the cable television system can be felt, touched, measured and seen *making the product of cable television tangible personal property.*

7. The basic element of the electronic signal processed in cable television is the electron. An electron is a negatively charged particle that has a recognizable mass, weight and substance.

. . . .

20. The items of machinery, tools and equipment listed . . . are directly used in the direct production, manufacture, processing and refining of the cable television signal.

21. During the years 1972, 1973 and 1974 Plaintiff purchased the various items of machinery, tools and equipment . . . and paid state gross retail tax on these purchases.

22. Plaintiff filed a claim for refund in the amount of One Thousand Eighty Six and 54/100 ($1,086.54), which was denied by Defendant on June 5, 1974.

23. Plaintiff was improperly charged for the state gross retail tax.

24. The within action involves multiple claims and multiple parties and that there is no just reason for delay in entering a judgment on behalf of the Plaintiff, Cable Brazil, Inc., against the Indiana Department of State Revenue, Sales Tax Division, the Defendant herein, for the sum of $1,086.54 along with Plaintiff's costs and interest from the date of judgment herein.

. . . .

### CONCLUSIONS OF LAW

1. The law is with the Plaintiff.

2. The purchases during the years 1972, 1973 and 1974 of various items of machinery, tools and equipment . . . used in the direct manufacture, processing, or refining of tangible personal property are exempt from tax under Reg. 39-620 promulgated by the Indiana Department of Revenue pursuant to the Gross Retail Sales Act.

3. The purchases during the years 1972, 1973 and 1974 of various items of machinery, tools and equipment, . . . used in the direct manufacture, processing or refining of tangible personal property are exempt from tax pursuant to IC 6-2-1-39(b)(6) of the Indiana Gross Retail Sales Act.

4. Plaintiff is entitled to a refund of all state gross retail tax paid by it on the purchase during the years 1972, 1973 and 1974

of various items of machinery, tools and equipment, . . . plus interest and costs of this action and all other just and proper relief in the premises.

5.   The within action involves multiple claims and multiple parties and that there is no just reason for delay in entering a judgment on behalf of the Plaintiff, Cable Brazil, Inc., against the Indiana Department of State Revenue, Sales Tax Division, the Defendant herein, for the sum of $1,086.54 along with Plaintiff's costs and interest from the date of judgment herein.

6.   That the Court's first amended order establishing the class and the conduct of the proceedings is included herein by reference as if set out fully.

(emphasis added)

*ISSUE*

Only one question is before us:

Is a television signal tangible personal property[1] within the meaning IND. CODE 6-2-1-39(b)(6) (the exemption statute) which exempts sales of equipment used in the processing of tangible personal property?

The Department maintains that a television signal is not tangible, personal property, asserting (1) that IND. CODE 6-2-1-38(n) providing for sales tax on cable television service would have been a needless act had the Legislature considerd cable television as tangible personal property; (2) that the use of the phrase "cable television service" in IND. CODE 6-2-1-38(n) indicates the Legislature considered cable television a service and not tangible personal property; (3) that a cable television signal is not tangible personal property within the common meaning of that phrase.

Cable Brazil contends that there is evidence to support the trial court's finding that a cable television signal is tangible personal property, and that this court cannot reweigh the evidence or retry the issue, and can only reverse when the evidence is uncontradicted.

---

1.   Because of our decision on this issue we need not address whether the equipment in question was involved in direct production, manufacture, processing and refining as used in IND. CODE 6-2-1-39(b)(6).

## DECISION

*CONCLUSION* — A cable television signal is not tangible personal property as that term is used in IND. CODE 6-2-1-39(b)(6).

The phrase "tangible personal property" is composed of words of art and is not interchangeable with the scientific definition of "matter". No case, in Indiana or elsewhere, identifies a television signal, which is a stream of electronic impulses, with tangible personal property for the purpose of taxation merely because it has basic properties of matter. The handful of cases in other jurisdictions that have considered the subject rely on meaning given their particular statute by their legislature.

In *Curry v. Alabama Power Company* (1942), 243 Ala. 53, 8 So.2d 521,[2] the Alabama Supreme Court found electricity was tangible personal property relying on a specific Alabama statute which listed electricity as a type of tangible personal property. In dicta that Court commented that scientific facts showed that electricity has mass or weight, can be tasted, touched and smelled, and therefore was tangible personal property.

The Arizona Supreme Court in *State Tax Commission v. Marcus J. Lawrence Memorial Hospital* (1972), 108 Ariz. 198, 495 P.2d 129, made much the same comment in finding that electricity fell within the statutory definition of tangible personal property as that which "may be seen, weighed, measured, felt, touched, or is in any other manner perceptible to the senses." But the case was decided on the basis that a change in the exemption statute from "tangible personal property" to "*all* personal property" made it absolutely clear that the Legislature intended electricity to fall within the exception.

Illinois took a seemingly realistic position in *Farrand Coal Company v. Halpin* (1957), 10 Ill.2d 507, 140 N.E.2d 698, wherein the court observed that while it was possible for the energy which exists in coal to be included in a valid definition of tangible personal property, the Court

---

2. In the more recent case of *State v. Television Corporation* (1961), 271 Ala. 692, 127 So.2d 603, the Alabama Supreme Court merely cited *Curry v. Alabama Power Company, supra,* and the statute discussed therein in finding electricity and therefore television signals were tangible personal property.

could not conceive of the Legislature using such a broad definition in enacting its tax legislation. It was also stated that although the Illinois court recognized electricity as personal property, it had at no time held electricity to be *tangible* personal property.

These cases do not illuminate our way in a determination of whether a television's signal is tangible personal property under our statute. They sought legislative intent, as must we, under the particular statutory verbiage used. It could be observed, however, that there is a scientific basis for a legislative definition of a television signal as tangible personal property, if a legislature should choose to do so. Ours has not done so. Cf. 17 ALR 3d 7 (1968) at 102-05 (Contrary holdings as to whether production of electricity was "manufacturing" within various tax exemption statutes.)

In construing the exemption statute to determine the legislative intent we must take a panoramic view of the entire gross retail tax statute. *See Allen Co. Dept. of Public Welfare v. Ball Memorial Hospital* (1969), 253 Ind. 179, 252 N.E.2d 424; *State v. Gilbert* (1966), 247 Ind. 544, 219 N.E.2d 892; *Ervin v. Review Board of Indiana Employment Security Division* (1977), 173 Ind.App. 592, 364 N.E.2d 1189; *Abrams v. Legbandt* (1974), 160 Ind.App. 379, 312 N.E.2d 113; 26 I.L.E. 314, § 113, Statutes.

Also, if there is an amgibuity as to a tax exemption provision, it will be *strictly construed against the party claiming the exemption. Gross Income Tax Division v. Nat'l Bank & Trust Co.* (1948), 226 Ind. 293, 79 N.E.2d 651; *Indiana Dept. of State Revenue v. Indianapolis Transit System* (1976), 171 Ind.App. 299, 356 N.E.2d 1204; *Indiana Dept. of State Revenue, Gross Income Tax Division v. American Dairy of Evansville, Inc.* (1975), 167 Ind.App. 367, 338 N.E.2d 698; *Madding v. Ind. Dept. of State Revenue, Gross Income Tax Division* (1971), 149 Ind.App. 74, 270 N.E.2d 771.

The only reference to cable television in the gross retail tax law is not in the exemption statute, but is found in IND. CODE 6-2-1-38(n), which treats sales by those furnishing cable television to consumers, and is therefore indicative of legislative intent. It reads:

(n) Every person engaged in the furnishing of *cable television*

*service,* with respect to the furnishing of *local cable television service or intrastate cable television service* shall be and constitute a retail merchant in respect thereto, and the gross income received therefrom upon billings or statements rendered to consumers, except receipts from the provision, installation, construction, servicing or removal of tangible personal property used in connection with the furnishing of such service, shall constitute gross income from selling at retail for the purposes of the state gross retail tax. (emphasis supplied)

Oblique though these references may be, they unmistakably describe the supplying of cable television as a "service".

It does not distort legislative intent to assume that when the Indiana gross retail tax was amended by IND. CODE 6-2-1-38(n) in 1971 to describe those furnishing cable television as retail merchants rendering a "service", the drafters of this provision did not consider cable television service to be tangible personal property exempt under the exemption statute. Otherwise they need not have enacted IND. CODE 6-2-1-38(n).[3] A presumption is raised that the

---

3. Liability to taxation would have been previously established by IND. CODE 6-2-1-38(a) and 6-2-1-1(k) (making transfer of tangible personal property subject to sales tax.)

IND. CODE 6-2-1-38(a) states:

Sec. 38. (a) Transactions of retail merchants constituting selling at retail shall include all transactions defined as "selling at retail" in IC 1971, 6-2-1-1(k), and all transactions defined as wholesale sales in IC 1971, 6-2-1-3(a) (except subdivision 4), and all transactions constituting selling at retail under the provisions of the section.

IND. CODE 6-2-1-1(k) states:

(k) The term "selling at retail" means and includes only a transaction by a "retail merchant" by which the ownership of tangible personal property is transferred, conditionally or otherwise, for a consideration, when such transfer is made in the ordinary course of the transferor's regularly conducted business and when such property is acquired by the transferor for the purpose of resale and is acquired by the transferee for any purpose other than the purposes designated in subsection (a) of section 3 of this chapter; Provided, however, That only so much of the consideration as represents the price at which such property is or may be sold without the rendition of any service whatever by the transferor in respect to such property and such bona fide charges separately stated on the records of the transferor as may be added to or included in such consideration for the preparation, fabrication, alteration, modification, finishing, completion, delivery or other services performed in respect to such property, and not to any extent in respect to any property owned by the transferee, or by or on behalf of the transferor prior to the delivery of the property to the transferee, or to the place of delivery

Legislature intended to change the law unless it clearly appears an amendment was made only to express more clearly the original intention of the Legislature. *Economy Oil Corp. v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215; *Daubenspeck v. City of Ligonier* (1962), 135 Ind.App. 565, 183 N.E.2d 95; *Board of Commissioners of Perry County v. Sweeney* (1962), 134 Ind.App. 33, 181 N.E.2d 241; *Opp v. Davis* (1962), 133 Ind.App. 365, 179 N.E.2d 298.

There is no basis in the language used to conclude that the addition of Sub-section (n), making "cable television service" taxable, was meant only to clarify existing law. *Cf. Mathis v. Cooperative Vendors, Inc.* (1976), 170 Ind.App. 659, 354 N.E.2d 269; *Economy Oil Corp. v. Indiana Dept. of State Revenue, supra* (clear indication that additional sales tax provision was meant as clarifying existing law). Consequently, the presumption that a statutory amendment is intended to change the statute indicates the Legislature did not consider a cable television signal covered by the phrase "tangible personal property".

Our conclusion is further strengthened by the specific language used by the Legislature in IND. CODE 6-2-1-38(n). The Legislature specifically and consistently referred to "cable television *service*."

And, the second clause of Sub-section (n) specifically differentiates between tangible personal property and cable television service. It states in part:

except receipts from the provision, installation, construction, servicing or removal of *tangible personal property used in connection with the furnishing of such service . . .*

(emphasis supplied)

Again in three other provisions of IND. CODE 6-2-1-38 the distinction is drawn between service and tangible personal property.[4]

---

designated by the transferee, shall be considered to be received from "selling at retail," and all other charges added to or included in such consideration for any and all other services performed by or on behalf of the transferor in respect to such property and the receipts of all persons from the performance of services on behalf of such transferor in respect to transactions constituting "selling at retail" by such transferor shall be considered receipts from the performance of services taxable under subsection (g) of section 3 of this chapter.

4.   (c) Every person engaged as a public utiity in furnishing or selling electrical energy,

Barring an expressed differing legislative intent, words in statutes are given their plain, ordinary, usual meaning. IND. CODE 1-1-4-1; *State v. Bress* (1976), 169 Ind.App. 397, 349 N.E.2d 229; *Jenkins v. Stotts* (1976), 169 Ind.App. 273, 348 N.E.2d 57. In common usage, a "service" is not property — tangible or otherwise. Rather, it is an act — property exists while a service is rendered or performed.

Considering the adoption of IND. CODE 6-2-1-38(n), the specific language used therein and the rule of strict construction against one claiming a tax exemption, we deem the expressed legislative intent to be that cable television signals are not tangible personal property within the meaning of the exemption.

The judgment is reversed.

Shields, J. concurs.

Robertson, J. (by designation) concurs.

NOTE — Reported at 380 N.E.2d 555.

---

natural or artificial gas or mixtures thereof, water, or steam or steam heating service to consumers for domestic or commercial consumption shall be and constitute a retail merchant in respect thereto, and the gross income received therefrom, except that part thereof received from sales to consumers for use in manufacturing, mining, production, refining, oil or mineral extraction and irrigation or to other public utility companies described subsections (c), (d) and (e) of this section and *except receipts from the provision, installation, construction, servicing or removal of tangible personal property used in connection with the furnishing of any such public utility service or commodity,* shall constitute gross income of a retail merchant received from selling at retail: Provided, That the furnishings of any such utility service or commodity for such excepted commercial or industrial uses not separately metered for such uses shall in its entirety constitute selling at retail unless such service or commodity is predominantly used for one (1) or more of said excepted uses, in which event it shall be deemed to be wholly used for such excepted uses.

(d) Every person engaged as a public utility in the furnishing of communication service, with respect to the furnishing of local exchange telephone service or intrastate message toll telephone service shall be and constitute a retail merchant in respect thereto, and the gross income received therefrom upon billings or statements rendered to consumers, except that part thereof received from other public utilities described in subsections (c), (d), or (e) of this section and *except receipts from the provision, installation, construction, servicing or removal of tangible personal property used in connection with the furnishing of such service,* shall constitute gross income received from selling at retail.

(e) Every person engaged as a public utility in the furnishing of telegraph service, with respect to the furnishing of intrastate telegraph service shall be and constitute a retail merchant in respect thereto, and the gross income received therefrom, except

---

that part received from other public utilities described in subsections (c), (d) or (e) of this section and *except receipts from the provision, installation, construction, servicing or removal of tangible personal property used in connection with the furnishing of such service,* shall constitute gross income from selling at retail.

[emphasis supplied]